THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.*
ADAMS, APPELLEE AND CROSS-APPELLANT.
THE STATE OF OHIO, APPELLANT, *v.* WHITE, APPELLEE.

[Cite as State v. Adams (1982), 69 Ohio St. 2d 120.]

(Nos. 80-1760 and 80-1761—Decided February 3, 1982.)

Mr. *John E. Shoop,* prosecuting attorney, *Mr. Randall L. Basinger* and *Mr. Keith B. Duboff,* for appellant.

*Messrs. Cort & Bruening* and *Mr. Kenneth M. Cort,* for appellee in case No. 80-1760.

*Mr. R. Paul LaPlante, Mr. Charles F. Cichocki* and *Mr. Samuel Militello,* for appellee in case No. 80-1761.

KRUPANSKY, J. R. C. 2151.26 and Juv. R. 30 provide the procedural mechanism by which a juvenile offender may be "bound over" to the adult court, and then tried as though he were an adult. In the instant case, this procedure was followed in Summit County, but was followed for each juvenile as to the charges stemming from only one of the two robberies committed in Lake County. Therefore, the central issue raised by these appeals and cross-appeal is whether the defendants were effectively bound over on all the offenses for which they were ultimately indicted, thus rendering all their convictions valid, including the Lake County robbery for which each was never formally charged in the Juvenile Court. We conclude the defendants were properly bound over as to all the counts with which they were charged. Therefore, we must reverse in part the judgments of the Court of Appeals.

Prior to any action by the Lake County Juvenile Court or the Lake County Grand Jury, the Juvenile Court of Summit County conducted hearings to decide whether to relinquish jurisdiction over the defendants to the adult authorities of Summit County. The purpose of these hearings, which are civil in nature, was to evaluate the amenability of the defendants to rehabilitation within the juvenile justice system. *In re Benn* (1969), 18 Ohio App. 2d 97. The Juvenile Court of Summit County concluded the defendants would not be amenable to care in any facility designed for the supervision of delinquent children and proceeded to relinquish jurisdiction over the defendants to the Summit County Common Pleas Court. Since the defendants never questioned this relinquishment of jurisdiction by the Summit County Juvenile Court, the determinations made at these hearings (that the defendants would not be responsive to treatment within the juvenile system) is

*res judicata* in any adult court in the state of Ohio. *Whitehead v. Genl. Tel. Co.* (1969), 20 Ohio St. 2d 108.

In the interest of judicial economy it is unnecessary for the Lake County Juvenile Court to make the same determination of binding over the same juveniles for like or similar crimes committed within a reasonably short period of time; especially since the defendants were incarcerated for three counts of aggravated robbery at the Ohio State Reformatory pending the proceedings in Lake County. To restate the above, once such a conclusion is reached by a Juvenile Court in any county in Ohio the transferred juvenile must be prosecuted by the adult authorities for felonies committed in other counties of the state, without first requiring that county to conduct another evaluation of the juvenile.

The Lake County Grand Jury and the Lake County Common Pleas Court also obtained jurisdiction over the defendants which was separate and distinct from the jurisdiction obtained as a result of the Summit County transfers. This second source of jurisdiction emanates from motions to relinquish jurisdiction filed in the Lake County Juvenile Court on January 4, 1978 pursuant to R. C. 2151.26 and Juv. R. 30. As stated previously, these motions were followed by oral hearings on September 21, 1978, which ended with the judge's conclusion that the defendants should be tried as adults. The judge's action was journalized on November 9, 1978 and indictments were filed against both defendants on November 14, 1978. The final step occurred on November 24, 1978 with the filing of *nunc pro tunc* journal entries to clarify the action which had been taken on September 21, 1978.

It is clear from the above the Lake County authorities complied with the necessary procedures required by R. C. 2151.26 and Juv. R. 30 to bind over each child in these two cases. Defendants contend, however, these procedures were properly completed only as to the charges initially filed in the Juvenile Court, and not as to those charges which first emerged with the grand jury indictments. Since the procedure was never specifically followed to relinquish jurisdiction over the defendants on the counts not filed in the Juvenile Court, defendants assert the Lake County Grand Jury and the Lake County Common Pleas Court lacked jurisdiction to act on

these matters. This assertion is patently illogical. As stated in *State* v. *Klingenberger* (1925), 113 Ohio St. 418, 425:

"Now grand juries have plenary and inquisitorial powers and may lawfully upon their own motion originate charges against offenders. * * * "

In respect to this "plenary power" it is clear the grand jury was not exceeding its authority in returning indictments on charges which were not originally brought in the Juvenile Court. A more extensive reading of *Klingenberger* provides further support for this conclusion.

*Klingenberger* held when a felony charge against a minor is transferred from the Juvenile Court to the Court of Common Pleas, the grand jury is empowered to return any indictment proper under the facts submitted to it. The court went on to state that when the case was transferred to the Court of Common Pleas, that court "took jurisdiction rightfully for all purposes." *Id.* In summarizing, the court in *Klingenberger* clarified the power of the grand jury by stating at page 426:

"In other words, the transfer from the juvenile court merely invoked the action by the grand jury, leaving that body free to return any indictment which conformed to the facts submitted to it in evidence."

Applying the above criteria to the instant cause, it becomes apparent the grand jury possessed the power and the authority to indict the defendants for both robberies committed in Lake County, not just the robbery in which the charges were originally filed in the Juvenile Court.

Defendants claim the holding in *Klingenberger* is irrelevant to the case at bar since it was decided under G. C. 1681, while the present case was decided under R. C. 2151.26, a successor statute to G. C. 1681. We fail to see any merit in this assertion. While the precise words of G. C. 1681 and R. C. 2151.26 vary, the substance and aim of these two sections remain the same; both sections provide for transferring a child charged with a felony to the jurisdiction of the Court of Common Pleas.[1] *Klingenberger* is not only relevant, it is ac-

---

[1] G. C. 1681 read:

"When any information or complaint shall be filed against a delinquent child under these provisions, charging him with a felony, the judge may order such child to enter into a recognizance, with good and sufficient surety, in such amount as he deems

tually dispositive of the present action. *Klingenberger* has not been overruled, and thus remains an effective enunciation of the law which we may not ignore. *Klingenberger* approved and followed. Defendants' contention that an additional proceeding was mandated in order to bind them over on the charges not originally brought in the Juvenile Court, is not only contrary to the holding in *Klingenberger,* but also clearly misconstrues the import of R. C. 2151.26 and Juv. R. 30.

R. C. 2151.26(E) reads in part: "No child, either before or after reaching eighteen years of age, shall be prosecuted as an adult for an offense committed prior to becoming eighteen, unless *the child* has been transferred as provided in this section. * * * " (Emphasis added.) This language speaks of a transfer of *the child,* and not the transfer of a particular cause of action. A review of Juv. R. 30 also speaks of the transfer of "a child" and not the transfer of a case or cause of action.[2] Furthermore, R. C. 2151.26(F) states: " * * * The transfer [of the juvenile to the adult authorities] abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint." Defendants construe this subsection to mean the abatement of jurisdiction refers only to the "acts alleged in the complaint," and no others. We agree R. C. 2151.26(F) states the jurisdiction of the Juvenile Court ceases as to these acts; however, this does not mean by implication that the Juvenile Court regains jurisdiction over the juvenile as to any future felonies which he commits prior to reaching the age of 18. There is no support for defendants' interpretation that jurisdiction is reinvested in the Juvenile Court for any subsequent felonies committed by the juvenile.[3]

reasonable, for his appearance before the court of common pleas at the next term thereof. The same proceedings shall be had thereafter upon such complaint as now authorized by law for the indictment, trial, judgment and sentence of any other person charged with a felony."

[2] Juv. R. 30 reads in part:

"(A) Preliminary hearing. In any proceeding where the court *may transfer a child* fifteen or more years of age for prosecution as an adult, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that such act would be a felony if committed by an adult. Such hearing may be upon motion of the court, the prosecuting attorney or the child * * * ." (Emphasis added.)

[3] Although not relevant to the case *sub judice,* R. C. 2151.26 was amended effective November 23, 1981 through the addition of subdivision (G) which provides:

The thrust of both R. C. 2151.26 and Juv. R. 30 is to assess the probability of rehabilitating the child within the juvenile justice system. Once this determination has been made by a competent court it is pointless to require relitigation of this same issue if the child commits subsequent felonies. We, therefore, hold R. C. 2151.26 in conjunction with Juv. R. 30 to provide once a transfer of a juvenile has been completed in any county in the state of Ohio, that juvenile must thereafter be prosecuted as an adult for any subsequent felony committed in Ohio.

In sum, therefore, R. C. 2151.26 and Juv. R. 30 provide for the following procedure: (1) once a juvenile is properly bound over in any county in Ohio, that juvenile must be considered bound over for any felonies committed in other counties of this state; (2) if a juvenile is bound over in a county for one felony, the grand jury may effectively indict that juvenile for any other felony committed in the same county; and (3) a juvenile once bound over to any adult court of this state shall thereafter be tried in the adult system of this state on any subsequent felonies.[4]

In reaching these conclusions we have relied upon several distinct grounds. First, we recognized the doctrine of *res judicata,* and its goal of avoiding the redetermination of issues previously decided. Second, we analyzed R. C. 2151.26 and Juv. R. 30 to ascertain the goal of the procedure which they set out. Third and final, we noted the clear precedential authority for our decision in the case of *State* v. *Klingenberger, supra.*

Accordingly, for all the foregoing reasons, the judgment of the Court of Appeals reversing the convictions of Adams is reversed, except for the theft offense which was not addressed by this court since it was not raised by the prosecutor on appeal; in all other respects the judgment is affirmed. Further-

"Any child whose case is transferred for criminal prosecution pursuant to this section and who is subsequently convicted in that case shall thereafter be prosecuted as an adult in the appropriate court for any future act that he is alleged to have committed that if committed by an adult would constitute the offense of murder or aggravated murder, or would constitute a felony of the first or second degree."

[4] In *Kent* v. *U. S.* (1966), 383 U. S. 541, the United States Supreme Court dealt with the general procedural matters to be followed during a juvenile bindover in order to comply with the mandates of due process. All constitutional requirements have been fulfilled in the present case, and therefore, *Kent* does not pertain.

128

more, the judgment of the Court of Appeals reversing the conviction of White is reversed and in all other respects the judgment is affirmed.

*Judgments reversed in part and affirmed in part.*

LOCHER, HOLMES and C. BROWN, JJ., concur.

CELEBREZZE, C. J., concurs in the judgment.

W. BROWN and SWEENEY, JJ., dissent.

SWEENEY, J., dissenting. The majority purportedly relies on R. C. 2151.26, Juv. R. 30, the doctrine of *res judicata,* and *State* v. *Klingenberger* (1925), 113 Ohio St. 418, to support the decision reached today. I am of the opinion, however, that the majority misconstrues R. C. 2151.26, improperly invokes *res judicata,* and erroneously resuscitates *Klingenberger.* Accordingly, I respectfully dissent.

R. C. 2151.26 states, in relevant part:

"(A) After a *complaint* has been filed alleging that a child is delinquent by reason of having committed an act that would constitute a felony if committed by an adult, the court at a hearing may transfer the *case* for criminal prosecution to the appropriate court having jurisdiction of the offense, after making the following determinations:

" * * *

"(2) There is *probable cause* to believe that the child committed *the act* alleged;

" * * *

"(E) No child, either before or after reaching eighteen years of age, shall be prosecuted as an adult for an offense committed prior to becoming eighteen, unless the child has been transferred as provided in this section. * * *

"(F) * * * The transfer abates the jurisdiction of the juvenile court with respect to the delinquent *acts* alleged in the complaint." (Emphasis added.)

According to R. C. 2151.26(A) the *complaint* sets in motion the process by which a Juvenile Court may transfer a *case* for criminal prosecution in the appropriate court. Such a transfer must be based on "probable cause * * * that the child committed the act alleged [in the complaint]." R. C.

2151.26(A)(2). R. C. 2151.26(A)(1) and (A)(3) deal with factors other than probable cause that a Juvenile Court must consider, *e.g.*, whether the child is at least 15 (R. C. 2151.26[A][1] ) and, *inter alia*, whether he is amenable to care or rehabilitation as a juvenile (R. C. 2151.26[A][3] ).

The (A)(1) and (A)(3) criteria generally respond to the United States Supreme Court's landmark decision in *Kent* v. *United States* (1966), 383 U. S. 541, which held, at page 560, that the relinquishment of jurisdiction by a Juvenile Court was a " 'critically important' proceeding" entitled to full procedural protection.[5] Moreover, the probable cause requirement in the Ohio statute provides an additional safeguard that actually goes beyond *Kent*. See Davis, Rights of Juveniles, 4-15, Section 4.3 (1980). Thus *Kent* and R. C. 2151.26 provide a stiff standard that must be met before a Juvenile Court may waive jurisdiction. The state did not meet this standard in the instant case because no allegations regarding certain of appellees' acts for which they were later convicted were before the Juvenile Court, and consequently, the Juvenile Court could not make the requisite probable cause determination with respect to acts not alleged in the complaint.[6]

The court, by way of syllabus, adopts appellant's first proposition of law that "[a] proper relinquishment of jurisdiction over a juvenile * * * requires 'adult' prosecution for all pending and subsequent criminal offenses." According to ap-

---

[5] Although the majority opinion acknowledges *Kent* in a footnote, I disagree with the assertion that "*Kent* does not pertain." Apropos to the instant cases, the *Kent* court stated at pages 560-561:

" '[I]t is implicit in [the Juvenile Court] scheme that noncriminal treatment is to be the rule—and the adult criminal treatment, the exception which must be governed by the particular factors of individual cases.' * * *

"Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions."

As for the majority's assertion that Juvenile Court proceedings are civil in nature, see *In re Gault* (1967), 387 U. S. 1, 50, wherein the " 'civil' label-of-convenience" as applied to juvenile courts received short shrift.

[6] The majority's statement to the effect that R. C. 2151.26(F) does not imply "that the Juvenile Court regains jurisdiction * * * as to any future [criminal acts]" inverts the statutory scheme. The Juvenile Court has "exclusive original jurisdiction," R. C. 2151.23, until it relinquishes its jurisdiction pursuant to R. C. 2151.26. The Juvenile Court may not consistent with the statute relinquish jurisdiction over future acts for the simple reason that future acts cannot be alleged in a complaint before they occur.

pellant, and now this court, the previous Summit County bind-over was *"res judicata * * * in* any adult court in * * * Ohio where knowledge of such adjudication was known as it was here." This view is contrary to the intent of the statute, which speaks in terms of transferring "a case."[7] The statute requires a case-by-case determination such that the Juvenile Court may properly evaluate the child, balancing all the statutory factors. Appellant's *"res judicata"* theory would not only permanently waive Juvenile Court jurisdiction but it would also effectively divest the juvenile authorities of the flexibility that historically has been the hallmark of the juvenile justice system.

I question the majority's reliance on *Whitehead* v. *Genl. Tel. Co.* (1969), 20 Ohio St. 2d 108, to buttress the new found *res judicata* theory because *Whitehead,* a civil action, dealt with the derivative claims of the parents of an injured child. Moreover, a *Whitehead*-type estoppel is inapplicable herein because the Juvenile Court cannot be said to have ruled on probable cause if the act for which probable cause needed to be shown had never been before it.

In addition, the problems posed by paragraph one of the syllabus are manifest. For example, if a 15-year old is arrested for a felony and is bound over to be tried as an adult but is found innocent, then any subsequent proceedings against that juvenile prior to his or her reaching majority for any felony, irrespective of degree or circumstance, would necessarily be held in the adult division. I glean no intent in the statute to countenance the result dictated by the above hypothetical situation.

I find the majority's marginal reference to R. C. 2151.26 (G) curious in several respects. R. C. 2151.26(G), as noted, did not become effective until November 23, 1981, well after the events in question herein occurred. If the court is pointing to R. C. 2151.26(G) for the purpose of showing the legislative intent underlying the prior statute, the court's holding today *under the old law* would render R. C. 2151.26(G) a legislative redundancy. The fact that in 1981 the General Assembly specifically provided in R. C. 2151.26(G) that a previous bind-

---

[7] The majority focuses on two words, "the child," in the statute but does not, in my opinion, consider these words contextually, particularly with reference to the "transferred as provided in this section" language that immediately follows.

over of a juvenile is to have conclusive effect in certain circumstances clearly indicates that matters relating to the conclusiveness of prior proceedings were not within the purview of the former R. C. 2151.26. Thus, the citation to R. C. 2151.26(G) undermines rather than supports the majority's analysis.

Furthermore, paragraph one of the syllabus of the majority opinion sweeps more broadly than R. C. 2151.26(G) in that under the recent enactment juveniles must not only have been previously bound over but they must also have been convicted, a requirement this court apparently is willing to dispense with. Consequently, the amendment of R. C. 2151.26, which purportedly was designed to facilitate and expedite the bindover process, turns out to be a limiting statute because this court today has managed to discover broader powers under the old statute than are provided under the new law. Little did the members of the General Assembly know when they passed R. C. 2151.26(G) to close a perceived loophole in R. C. 2151.26 that this court would *sua sponte* rewrite the statute for them and make the amendment effective well ahead of schedule.

The majority also, and gratuitously, offers the policy reason of "judicial econony" to support its *res judicata* finding. Judicial economy, as we all are aware, is a desirable goal. However, this goal should not be exalted to the point that we find ourselves ignoring statutory procedural protections established by the General Assembly and the clear statement of the United States Supreme Court.[8] Moreover, I submit that the decision today will prove to be judicially uneconomical because it condones prosecutorial inefficiency. I strongly suspect that these cases are presently before us because of an avoidable communications breakdown early in the proceedings.[9] Today's holding sends out a clear signal that pro-

---

[8] See, *e.g.*, the recent bench colloquy on "judicial economy" between United States Supreme Court justices and defense counsel as summarized in 50 U.S.L.W. 3363, November 10, 1981: Justice Rehnquist asked, "Why should the taxpayers have to foot the bill" of confining the defendant for life under a psychiatrist's care? Defense counsel replied, "It would be cheaper than executing him." Justice Marshall later retorted, "It would have been cheaper still just to have shot the defendant at the time of his arrest." Defense counsel, "That's correct." Justice Rehnquist did not respond to this.

[9] It is perhaps worth noting that the Summit County authorities had no apparent difficulty in binding over these appellees in accordance with the statute and Juv. R. 30.

cedural gaffes born of carelessness will be corrected on appeal, thereby inspiring more protracted appeals to this court and the courts of appeals. The prospect of increasingly jammed appellate dockets does not exactly comport with my view of judicial economy.

I believe that the majority opinion engages in a vain effort to breathe new life into the 1925 *Klingenberger* case. *Klingenberger* did hold in paragraph two of the syllabus that " * * * under the provisions of Section 1681, General Code, the grand jury is empowered *to return any indictment proper under the facts submitted to it.*" *Klingenberger* however, predated *Kent* and R. C. 2151.26. The former transfer statute, G. C. 1681, contained no probable cause requirement, and imposed no burden on the Juvenile Court to consider the other R. C. 2151.26 factors.[10] Moreover, *Klingenberger* dealt with charges stemming from a single criminal incident. Thus, *Klingenberger* is distinguishable from the instant cases on both the law and the facts.

Another shortcoming of the majority opinion is that it fails to address specifically the issues raised in the cross-appeal taken in case No. 80-1760. I take the liberty of speaking to these issues even though I find them to be without merit.

Appellee and cross-appellant Adams contends that because evidence of the Wickliffe robbery was improperly before the jury, he was prejudiced on all counts and therefore is entitled to a reversal of the conviction for the Willoughby robbery. The state asserts that this question, not having been raised below, is not properly before this court. Even assuming, however, that cross-appellant's position that the issue is

---

[10] The majority disingenuously asserts that *"Klingenberger* has not been overruled." *Kent,* which established procedural standards far more stringent than those approved in *Klingenberger,* and R. C. Chapter 2151 have, as a practical matter, overruled *Klingenberger. Klingenberger* was decided on statutory grounds and the repeal of the statutory underpinning necessarily calls into question a judicial decision based on the repealed statute.

Moreover, to state that "[w]hile the precise words of G. C. 1681 and R. C. 2151.26 vary, the substance and aim * * * remain the same" begs the question of why the words were changed. If the General Assembly wanted to incorporate G. C. 1681 into the Revised Code without changing the language, it would have done so. This court is not privileged to disregard unambiguous statutory language whenever it prefers the law as repealed over the law now in effect simply because "the substance and aim * * * remain the same."

proper as one that first surfaced at the Court of Appeals level, the clear, independent evidence presented regarding cross-appellant's participation in the Willoughby robbery negates any claim of prejudice based upon the effect of the improper evidence of the Wickliffe robbery.

Cross-appellant Adams challenges the propriety of the grand jury proceedings, which, he alleges, pre-dated the Juvenile Court's relinquishment of jurisdiction in contravention of R. C. 2151.25 and 2151.26. The juvenile division waived jurisdiction at the September hearing, journalized its ruling in November accompanied by a *nunc pro tunc* entry relating back to the September hearing date. The indictments bear an October date but were not filed until November, subsequent to the Juvenile Court's *nunc pro tunc* journalization. The Court of Appeals stated that the " *'nunc pro tunc'* entry merely corrected the judicial records so as to correctly reflect the earlier court decision." This ruling is correct.

Cross-appellant's final proposition concerns whether the trial court abused its discretion in failing to make the grand jury record public. The basis for the request to open the record was the sixth count of the original indictment, alleging a concealed weapon violation for which no evidence was ever presented. (This count was ultimately directed out by the trial court.) Cross-appellant contends that the faulty sixth count indicated that "the grand jury did not vote separately as to each count * * * as is required by Crim. R. 6(F)" and therefore, "the entire indictment was improper *ab initio,* thus patently prejudicial." Crim. R. 6(C) states, in part, that "the [grand jury] record shall not be made public except on order of the court." The Court of Appeals found no abuse of discretion and further noted that cross-appellant was not prejudiced by the trial court's ruling in that count six had been directed out. On balance, the policy of preserving grand jury secrecy outweighs cross-appellant's mere speculation that the grand jury might have acted improperly.

For the reasons hereinbefore stated I would affirm the Court of Appeals in all respects.

W. BROWN, J., concurs in the foregoing dissenting opinion.