OPINION
Bernando Morrow is appealing from his convictions of aggravated robbery and aggravated burglary following his plea of guilty to both offenses. He had also been originally charged with kidnaping, but that was dismissed as part of the plea bargain.
Morrow, who was seventeen at the time, was charged in Juvenile Court with the offenses, but the State subsequently requested the Juvenile Court to relinquish jurisdiction and transfer Morrow to the General Division of the Common Pleas Court to stand trial as an adult.
The Juvenile Court held a probable cause hearing on November 25, 1997, during which the incident which led to the charges was described in detail; first, by a witness who heard a lady screaming around 11:15 p.m. on November 1, 1997, and saw three young men forcing their way into her home. He called the police and waited until they arrived four or five minutes later. Tr. 5-9. On the night in question, the victim, Theresa M. Butcher, received a telephone call from a purported tenant of one of her rental properties asking for a hammer and nail to secure the door of the property. She then heard a knock on the front door of her house. When she went to the door, she recognized the young man standing there as a son of either a present or former tenant. She then opened the outer door and was about to go out and pull the inner door shut behind her, knowing it would lock automatically, when she was hit on the head. She started screaming until tape was wrapped all around her head. It turned out to be duct tape, but she was able to breathe by pushing a finger into her mouth and making a small hole there. Morrow, who was upstairs when the police arrived, jumped out of a second floor window and was apprehended. Later that night at the police station, after his rights were explained to him, Morrow wrote out a confession and signed it. There is no issue as to the voluntariness of the confession, as read by Morrow during the probable cause hearing, and it is in full as follows:
 Q. Can you tell us what that statement says, can you read it for us?
 A. Yes sir. "Tonight Man and Brian and myself tried to rob an old lady who live and Riverview and Dunbar. I knock on the lady door. She ask who is it, Man said some name. Then she ask us what did we want, I told her I came to bring her the rent money. She opened the door. I acted like I was getting the money. Then I hit her and pulled her back in the house. Then Man and Brian came in. I told somebody to stay" — I'm sorry — "I told someone to hold her and I went upstairs. The idea was to get the money and leave. While I was upstairs I found over fifty dollars and some duct tape. I throw it downstairs and told someone to tape her up. So they did and I was looking for some more money and then I heard someone knock at the door. I look out the window and seen flashlights. It was poo poos. Then I kick out the side window and jump out. Then I was caught and now I'm here." And it is signed Bernando Morrow at the bottom.
Tr. 38-39.
At the conclusion of the hearing, the court found probable cause that all three charged offenses were committed by Morrow, and explained to Morrow and his mother that the evaluation of transferring Morrow to the adult criminal justice system is a two-prong procedure, the first prong being the hearing that they just went through. The second prong, after a psychological evaluation and updated social history of Morrow, will be what is known as an amenability hearing to determine if Morrow "is not amenable to care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children" and "the safety of the community requires the child be placed under legal restraint for a period extending beyond the child's majority." Juv.R. 30(D).
In determining whether the child is amenable to treatment or rehabilitation in a juvenile facility, the juvenile court shall consider the following factors:
 **2 (1) The child's age and mental and physical condition;
(2) The child's prior juvenile record:
 (3) Efforts previously made to treat or rehabilitate the child;
(4) The child's family environment;
(5) The child's school record;
 (6) The specific facts relating to the offense for which probable cause was found, to the extent relevant to the child's physical or mental condition.
Juv.R. 30(F).
In State v. Watson (1989), 47 Ohio St.3d 93, the Ohio Supreme Court stated:
 The purpose behind Juv.R. 30, and its statutory counterpart, R.C. 2151.26, is "the assessment of the probability of rehabilitating the child within the juvenile justice system." State v. Douglas (1985), 20 Ohio St.3d 34, 36, 20 OBR 282, 284, 485 N.E.2d 711, 713; State v. Adams (1982), 69 Ohio St.2d 120, 123, 23 O.O.3d 164, 167, 431 N.E.2d 326, 329. In making this assessment, the juvenile court enjoys wide latitude to retain or relinquish jurisdiction, and the ultimate decision lies within its sound discretion. State v. Carmichael (1973), 35 Ohio St.2d 1, 64 O.O.2d 1, 298 N.E.2d 568, paragraphs one and two of the syllabus; see, also, Douglas, supra, 20 Ohio St.3d at 36-37, 20 OBR at 284-285, 485 N.E.2d at 713. There is no requirement that each, or any, of the five factors in Rule 30(E) be resolved against the juvenile so long as the totality of the evidence supports a finding that the juvenile is not amenable to treatment. Douglas, supra, at 37, 20 OBR at 285, 485 N.E.2d at 713, citing State v. Oviedo (1982), 5 Ohio App.3d 168, 5 OBR 351, 450 N.E.2d 700.
On appeal, Morrow brings the following sole assignment of error:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN CONCLUDING THAT APPELLANT (MORROW) WAS NOT AMENABLE TO CARE OR REHABILITATION IN ANY FACILITY DESIGNED FOR THE CARE, SUPERVISION, AND REHABILITATION OF DELINQUENT CHILDREN WHICH FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In its order and entry relinquishing jurisdiction to the general division, filed January 27, 1998, after the amenability hearing held on January 16, the court found as follows:
 The Court finds that a full investigation, including a social history by Johnny Vance of the Court's Probation Department and a mental examination by the Court's psychologist, Dr. Laura Fujimura were previously ordered by this Court and that said examinations have been performed and that all said persons performing said examinations were qualified to make such examinations and they have been submitted in writing and reviewed by the Court. In addition, a report was prepared and admitted into evidence by Dr. J. Daniel Barna, a clinical psychologist and attorney.
 The Court, in determining that said child is not amenable to treatment and rehabilitation in a juvenile setting finds that the said Bernando R. Morrow:
 1. was seventeen years and one month of age at the time of the offenses alleged in the complaint;
 2. that the Court found probable cause to believe that the offenses of aggravated burglary, aggravated robbery, and kidnapping, all felonies of the first degree, were committed by the offender and that said offenses could result in sentences of three to thirty years in the adult system;
 3. that the psychological evaluations and reports submitted by Dr. Fujimura and Dr. Barna, while reaching different results in their opinion as to amenability, indicated no specific serious mental deficiencies, either low average or average I.Q., and a mental health diagnosis of either a conduct disorder or a disruptive behavior disorder not otherwise specified, depending on how you interpreted the current offenses;
 4. the Court also found that said child's record, while not extremely lengthy, demonstrated a clear increase in severity and escalation of violence and intimidation which included criminal damaging, throwing rocks at passing cars, strong arm robbery of a pizza delivery man utilizing a BB gun as a weapon and finally the current charges of aggravated burglary, aggravated robbery and kidnapping;
 5. although the Court finds in retrospect that services provided to the child and family could have been greater, it is clear that the child's behavior has escalated while continuing to receive monitoring and services by our probation department and that mother and family have continued to fail to provide adequate parenting and structure, even with the help of the probation department;
 6. the Court finds that the child's educational development has been very poor and shows no real signs of promise in that in the seventh grade he received two D's and five F's, in the eighth grade one D and five F's and the first time in the ninth grade he received four B's and ten F's and the second time in the ninth grade up until the time of his incarceration on the current offenses he was receiving two C's, a D and three F's;
 7. finally the Court finds that Bernando knew the victim, that Bernando suggested the offense or offenses to other offenders, that he knew of the approximate age of the victim who was seventy years of age, he knew that she collected rent and that he and his family had rented property from the victim in the past and that finally, he struck her in the face, knocking her to the ground or struck her in the face and pushed her to the ground as he forced entry into her home and thereafter ordered his co-offenders to duct tape her face in order to shut her up, almost suffocating the elderly victim.
Juv. Record 7.
The court then found that the required criteria for transferring Morrow to the general division were present.
On appeal, Morrow argues that the Juvenile Court abused its discretion when it relinquished jurisdiction over this case so he could be criminally prosecuted as an adult. After reviewing the record, including the entire transcript of both hearings, we disagree, and accordingly, we will affirm the judgment of the trial court.
The trial court clearly and thoroughly explained its decision in its findings as set forth above. It was faced with differing opinions by the two psychologists who testified, one for the State, and one for the defense. From our review of the record, we find more than sufficient competent, and credible evidence supporting the decision of the trial court. True, there was some evidence that possibly Morrow would be amenable to treatment in juvenile facilities, but, on the other hand, as the court found, he "demonstrated a clear increase in severity and escalation of violence intimidation." Entry, par. 4. Dr. Laura E. Fujimura-Drenik, citing Morrow's "chronic history of behavioral difficulties" (Tr. 88) and his "moderate to severe conduct disorder" (Tr. 101) opined that she did not believe Morrow was amenable to services within the juvenile justice system. (Tr. 109). She also testified that "Bernando himself said `my record has gotten worser and worser.'" (Tr. 142).
James Daniel Barna, the expert witness for the defense, testified that his diagnosis of Bernando was "disruptive behavior disorder not otherwise specified," (Tr. 156), and then opined that he thought Morrow would be amenable. (Tr. 167).
While the court was faced with a choice between experts, we cannot say that it abused its discretion in determining that Morrow was not amenable for treatment in the juvenile justice system.
The sole assignment of error is overruled.
The judgment is affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Johnna M. Shia
J. Allen Wilmes
HON. ADELE M. RILEY