[Cite as *State v. Strickland*, 2023-Ohio-1252.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                                    :

    Plaintiff-Appellee,                              :
                                                                                        No. 22AP-329
v.                                                                    :        (C.P.C. No. 05CR-5951)

Tommie Strickland,                                      :        (REGULAR CALENDAR)

    Defendant-Appellant.                        :

---

D E C I S I O N

Rendered on April 18, 2023

---

**On brief:** [*Janet A. Grubb*, First Assistant Prosecuting Attorney], and *Paula M. Sawyers*, for appellee.

**On brief:** *Tommie Strickland*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} This is an appeal by defendant-appellant, Tommie Strickland, from a decision and entry of the Franklin County Court of Common Pleas denying appellant's pro se motion to "vacate void conviction."

## I. Facts and Procedural History

{¶ 2} On April 11, 2005, plaintiff-appellee, State of Ohio, filed a complaint in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch ("juvenile court"), alleging that appellant, then 17 years of age, had committed acts that would constitute felonies if committed by an adult, i.e., aggravated murder, in violation of R.C. 2903.01(B), and aggravated robbery, in violation of R.C. 2911.01(A)(1). The complaint alleged in part that appellant "did purposely cause the death of another, * * * Dishawn

Parks[,] while committing aggravated robbery, to wit: stole property from the victim then shot and killed the victim with a firearm" in violation of R.C. 2903.01(B), and that "while committing a theft offense, to wit: theft [in violation of R.C. 2913.02(A)(1)]," appellant did "have a deadly weapon under his control and used said weapon" in violation of R.C. 2911.01(A)(1). The complaint arose out of the shooting death of 17 year old Dishawn Parks that occurred on March 12, 2005, at the City Center Mall in Columbus, Ohio. Parks died of a single gunshot wound to the chest.

{¶ 3} On April 13, 2005, the state filed a motion to relinquish jurisdiction pursuant to R.C. 2152.12(A). The juvenile court subsequently held a probable-cause hearing and made findings "[t]here is probable cause to believe that [appellant] committed the act of Aggravated Murder, in violation of [R.C.] 2903.01(B) * * *, a Category One offense * * *, and the act of Aggravated Robbery, in violation of [R.C.] 2911.01(A)(1) * * *, a Category Two offense * * *; and further [appellant] had on or about his person or under his control a firearm as defined in [R.C.] 2923.11 * * * while committing the acts charged, and further [appellant] brandished and/or used a firearm to facilitate the commission of the acts charged." (Sept. 7, 2005 Entry Sustaining State's Motion to Relinquish Jurisdiction at 1.) The juvenile court therefore relinquished jurisdiction of the case and ordered the matter to be transferred to the Franklin County Court of Common Pleas, General Division, for prosecution of appellant as an adult.

{¶ 4} On September 20, 2005, a Franklin County Grand Jury returned an indictment charging appellant with one count of aggravated murder, in violation of R.C. 2903.01, one count of aggravated robbery, in violation of R.C. 2911.01, two counts of robbery, in violation of R.C. 2911.02, and one count of kidnapping, in violation of R.C. 2905.01. Each of the counts also carried firearm specifications under R.C. 2941.141 and 2941.145. All five counts alleged conduct occurring on March 12, 2005, and involving the same victim (i.e., Parks).

{¶ 5} The matter initially came for trial on February 28, 2006. Upon request of defense counsel, the trial court declared a mistrial. Appellant subsequently filed a motion to bar retrial based on double jeopardy grounds. By decision and entry filed July 20, 2006, the trial court denied appellant's motion to bar retrial.

{¶ 6}   The matter came for retrial before a jury beginning September 6, 2006.  At trial, the state presented evidence that Parks was at the City Center Mall on March 12, 2005; he was wearing new Michael Jordan tennis shoes, and was carrying cash, a cell phone, and marijuana.  Appellant and an acquaintance, Keyonne Lewis, were also at the mall, and appellant was in possession of a firearm.  Christian Dawson testified he was at the mall that day, and he overheard Lewis tell appellant that Parks "had money and weed, we ought to get him."  (Sept. 6, 2006 Tr. at 197.)  Appellant and Lewis "were trying to get Dishawn to come outside" to rob him outside the mall.  (Sept. 6, 2006 Tr. at 204.)  Parks, however, remained in the mall.  Dawson then observed appellant approach Parks at a Wendy's restaurant inside the mall, and "they started walking to the restroom."  (Sept. 6, 2006 Tr. at 208.)

{¶ 7}   Raymond McNeal testified he was at the City Center Mall on March 12, 2005 and he observed appellant and Lewis robbing Parks in a restroom area.  Parks had his hands up in the air and he was no longer wearing his tennis shoes.  McNeal heard appellant tell Parks to "be cool or he was going to shoot him."  (Sept. 7, 2006 Tr. at 307.)  Lewis was carrying tennis shoes in his hand, and Parks attempted to "get his shoes back."  (Sept. 7, 2006 Tr. at 308.)  After a struggle ensued between Lewis and Parks over the tennis shoes, Lewis took off running.  Appellant and Parks were "standing in front of each other," and then McNeal heard "a loud shot" and a scream from Parks.  (Sept. 7, 2006 Tr. at 309.) Appellant then ran past McNeal.

{¶ 8}   Erin Cossell, an acquaintance of appellant, testified that appellant told her "they struggled over the gun and the gun went off."  (Sept. 7, 2006 Tr. at 454.)  Also at trial, the state introduced portions of a transcript of the juvenile court testimony of Allen Wright, who stated that appellant "asked me did I remember dude got killed that day downtown at the City Center. * * * He said he did it."  Appellant told Wright "there was a robbery, that the dude had weed."  (Sept. 7, 2006 Tr. at 438.)

{¶ 9}   Following deliberations, the jury returned verdicts finding appellant guilty of aggravated murder, aggravated robbery, robbery as a second-degree felony, robbery as a third-degree felony, and kidnapping. The jury also returned verdicts finding appellant guilty of the firearm specifications associated with those counts.  By judgment entry filed November 27, 2006, the trial court sentenced appellant to a total term of incarceration of

40 years. The trial court filed corrected judgment entries on December 13, 2006, and February 7, 2007, respectively.

{¶ 10} Appellant appealed his convictions, raising five assignments of error. In *State v. Strickland*, 10th Dist. No. 06AP-1269, 2008-Ohio-1104, this court overruled all of appellant's assignments of error and affirmed the judgment of the trial court. Appellant subsequently sought habeas relief in federal district court, and the court denied his petition. *See Strickland v. Kerns*, S.D. Ohio No. 2:09-CV-681 (Jan. 26, 2011).

{¶ 11} On July 5, 2013, appellant filed a pro se motion for resentencing, pursuant to Crim.R. 52(B), asserting the trial court erred in failing to merge several of the counts for purposes of sentencing. By decision and entry filed March 21, 2014, the trial court denied appellant's motion for resentencing. Appellant appealed that decision, raising two assignments of error. In *State v. Strickland*, 10th Dist. No. 14AP-307, 2014-Ohio-5105, this court affirmed the judgment of the trial court.

{¶ 12} On February 25, 2022, appellant filed a pro se "motion to vacate void conviction," relying primarily on a recent Supreme Court of Ohio decision, *State v. Smith*, 167 Ohio St.3d 423, 2022-Ohio-274. In the accompanying memorandum in support, appellant argued the trial court lacked subject-matter jurisdiction to adjudicate his case, asserting the juvenile court "only conferred its EXCLUSIVE jurisdiction over him for the prosecution of the alleged acts it found probable cause to believe he had committed," and that the bindover to adult court "DID NOT open the door for the state to seek additional charges in his indictment." (Emphasis sic.) More specifically, appellant argued his "judgement [sic] of conviction" was void "as the juvenile court DID NOT bound [sic] over the acts charged in count 3 (three), 4 (four), and 5 (five) of his original complaint." (Emphasis sic.) Appellant thus asserted his "conviction must be VACATED or otherwise be dismissed for the jurisdictional defect in his bound [sic] over process." (Emphasis sic.) (Feb. 25, 2022 Mot. to Vacate Void Conviction at 2.)

{¶ 13} On March 16, 2022, the state filed a memorandum contra appellant's motion to vacate void conviction. The state argued the recent decision in *Smith* was inapplicable to this case on the grounds that: (1) unlike the facts of *Smith*, the juvenile court did not find probable cause was lacking on any count or specification, (2) appellant's convictions were all authorized under R.C. 2151.23(H) as both the aggravated murder and aggravated

robbery counts, as well as the attached firearm specifications, were transferred by the juvenile court, and the two robbery counts and the kidnapping count were either lesser-included offenses to the aggravated robbery count or were rooted in the basis of the transfer, and (3) any purported errors were non-jurisdictional.

{¶ 14} By decision and entry filed April 1, 2022, the trial court denied appellant's motion to vacate void conviction. The court held in part that the recent decision in *Smith* was distinguishable from the instant action, and that the convictions in adult court were not void for lack of jurisdiction based on a purported improper bindover.

{¶ 15} Appellant subsequently filed a pro se motion for leave to file a delayed appeal from the trial court's judgment entry of April 1, 2022. This court granted appellant's motion for leave finding he had satisfied his burden of demonstrating a reasonable explanation for his failure to file a timely appeal.

## II. Assignments of Error

{¶ 16} On appeal, appellant sets forth the following two assignments of error for our review:

> [I.] The trial court lacked subject-matter jurisdiction to try and convict Strickland for offenses for which not probable cause was found in the juvenile court, in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.
>
> [II.] The trial court erred in denying Strickland's Motion to Vacate Void Conviction on the basis that his convictions were not void, in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

## III. Analysis

{¶ 17} Appellant's assignments of error are interrelated and will be considered together. Under these assignments of error, appellant asserts the trial court erred in: (1) failing to find it lacked jurisdiction to try and convict him for offenses for which probable cause was not found in the juvenile court, and (2) in denying his motion to vacate void conviction on the basis his convictions were not void.

{¶ 18} While appellant's pro se brief raises arguments as to all of his convictions, his primary contention on appeal is that the Supreme Court's recent decision in *Smith* dictates

that his convictions for two counts of robbery and one count of kidnapping are invalid because the juvenile court never made a probable-cause determination as to those offenses (i.e., offenses that were charged in the grand jury indictment following the bindover but that were not part of the juvenile court complaint). In addition to the decision in *Smith,* appellant relies on a decision of the First District Court of Appeals, *State v. Williams*, 1st Dist. No. C-210384, 2022-Ohio-2022, *discretionary appeal accepted for review*, 168 Ohio St.3d 1447, 2022-Ohio-3909, in which that court interpreted the holding in *Smith* to conclude an adult court lacked jurisdiction over a count (charging the defendant with tampering with evidence) since the juvenile court never determined whether probable cause existed for that count.

{¶ 19} In response, the state argues *Smith* is distinguishable from the facts of the instant case, asserting that *Smith* "addressed a very specific, limited issue regarding an adult court's subject matter jurisdiction over charges that the juvenile court *explicitly found there was no probable cause for.*" (Emphasis sic.) (State's Brief at 23-24.)

{¶ 20} We begin by reviewing the holding in *Smith*. Under the facts of that case, a complaint was filed in juvenile court charging Smith, a juvenile at the time of the conduct at issue, with offenses that, if committed by an adult, would constitute two counts of aggravated robbery (Counts 1 and 2), one count of grand theft (Count 3), one count of theft (Count 4), one count of misdemeanor theft (Count 5), two counts of failure to comply (Counts 6 and 7) and one count of having a weapon while under disability (Count 8). The juvenile court conducted a probable-cause hearing and determined there was probable cause to believe Smith committed acts that would, if committed by an adult, constitute aggravated robberies (Counts 1 and 2), as well as grand theft (Count 3). The juvenile court, however, found "no probable cause" with respect to the remaining felony counts (i.e., "Counts 4 and 6 through 8"). *Smith* at ¶ 11. The juvenile court also "found no probable cause for the firearm specifications relating to Counts 1 through 4." *Id.*

{¶ 21} Following transfer of the case to adult court, "the state obtained a grand-jury indictment against Smith on eight counts that were identical to those that had been alleged in the original juvenile complaint, including those for which the juvenile court had found no probable cause and including firearm specifications on the aggravated-burglary counts and the grand-theft and theft counts." *Id*. at ¶ 12. Smith subsequently entered into an

agreement with the state and pled guilty to one amended count of aggravated robbery, with a firearm specification, and one amended count of grand theft, with no firearm specification.

{¶ 22} On appeal, Smith argued "the adult court lacked subject-matter jurisdiction to consider charges related to acts for which the juvenile court had found no probable cause, i.e., Counts 4 and 6 through 8, and the firearm specifications." *Id.* at ¶ 14. The appellate court "upheld the adult court's holding that it had jurisdiction over all the charges that were originally heard by the juvenile court, some of which the juvenile court had found were not supported by probable cause." *Id.* at ¶ 15. The Supreme Court subsequently accepted jurisdiction over the case.

{¶ 23} In *Smith*, the Supreme Court held that an adult court lacks subject-matter jurisdiction to convict a juvenile offender "for any acts charged for which no probable cause has been found by a juvenile court." *Id.* at ¶ 42. Thus, with respect to the specific charges at issue in that case, the Supreme Court held the adult court lacked subject-matter jurisdiction over Counts 4, 6, 7, and 8, as well as the firearm specifications, "because the juvenile court found that the acts related to those counts and specifications were not supported by probable cause and thus the juvenile court could not have made an amenability determination with regard to those acts." *Id.* at ¶ 43. Accordingly, "[t]here was * * * a jurisdictional defect in the bindover process." *Id.*

{¶ 24} The Supreme Court in *Smith* also observed that, in accordance with the provisions of R.C. 2151.23(H), which set forth the jurisdiction of the adult court following a transfer, "there are three situations in which a child may be convicted of a crime that is different from the offense transferred by the juvenile court." *Id.* at ¶ 33. Specifically, "the child may be convicted (1) of an offense that is the same degree or a lesser degree of the offense that was the basis of the transfer, (2) of an offense that is a lesser included offense of the offense that was the basis of the transfer, *or* (3) '*for the commission of another offense that is different from the offense charged.*' " (Emphasis sic.) *Id.*

{¶ 25} The court further explained: "The phrase 'another offense that is different from the offense charged' is but one of three parts of the statutory scheme of R.C. 2151.23(H) modifying the phrase 'offense that was the basis of the transfer.' " *Id.* at ¶ 35. The Supreme Court recognized that "[t]his language gives adult courts flexibility in

resolving cases by allowing them to accept a plea to or convict the defendant of an offense that is either a lesser degree of, a lesser included offense of, or an offense different from the offense charged that was rooted in the offense that was the basis of the transfer." (Footnote omitted.) *Id.*

{¶ 26} In the present case, the trial court found appellant's reliance on *Smith* misplaced in that it was factually distinguishable. Specifically, the court noted, under the facts of *Smith*, the defendant was convicted in adult court on counts for which the juvenile court "specifically found the absence of probable cause," whereas in the instant case "the juvenile court found probable cause on all of the counts and specifications that were charged in the juvenile complaint." (Apr. 1, 2022 Decision & Entry at 2.)

{¶ 27} We agree with the trial court that the facts of this case are distinguishable from those presented to the Supreme Court in *Smith* in which a juvenile court made an express finding of no probable cause on counts which were later brought in adult court. By contrast, the juvenile court in the present case made an express finding of probable cause as to all of the counts (and specifications) charged in and bound over by the juvenile court (i.e., aggravated murder and aggravated robbery). Thus, the facts herein do not implicate *Smith's* holding that an adult court lacks jurisdiction over acts charged for which a juvenile court specifically found unsupported by probable cause.

{¶ 28} Appellant appears to concede that, under *Smith*, he could have been tried and convicted in adult court for "Aggravated Murder in violation of R.C. 2903.01(B) and Aggravated Robbery in violation of R.C. 2911.01(A)(1), along with the Firearm Specifications." (Appellant's Brief at 5.) Appellant argues, however, that those were "the only offenses" for which he could have been tried and convicted. (Appellant's Brief at 5.) Appellant contends the holding in *Smith* stands for the proposition that he could not have been convicted in adult court for the two robbery counts and the single count of kidnapping because the juvenile court never made a probable cause determination as to those offenses. Further, according to appellant, the "[a]bsence of probable cause must be inferred for any offense not included in the juvenile complaint." (Appellant's Brief at 10.)

{¶ 29} As noted, appellant finds support for his argument in a decision of the First District Court of Appeals in *Williams*, in which that court interpreted *Smith* to hold that a juvenile court properly transferred two counts of murder and one count of assault (for

which the juvenile court determined probable cause existed), but that the adult court lacked subject-matter jurisdiction over a tampering with evidence count because the state "never charged Williams in the juvenile court with acts that would have constituted tampering with evidence" and therefore, "[i]n turn, the juvenile court neither considered, nor determined, whether probable cause existed to believe that Williams committed that act as required by R.C. 2152.12." *Williams* at ¶ 16. The court concluded that "[w]ithout this finding, the juvenile court retained exclusive jurisdiction over that act" and, "without a transfer, the adult court lacked jurisdiction to convict him for that act." *Id.*

{¶ 30} We note the decision in *Williams* involved a factual scenario not presented in *Smith,* i.e., whether the adult court had jurisdiction to convict a defendant for an act never charged in juvenile court and for which the juvenile court never made any probable cause determination at all. We further note the decision in *Williams*, which is currently pending before the Supreme Court following its acceptance of a discretionary appeal by the state, contains no discussion as to the applicability of the provisions of R.C. 2151.23(H) (including whether, under the particular facts of that case, the tampering with evidence charge was "rooted in" the underlying murder offense at issue in the juvenile complaint, i.e., the subject of the bindover).

{¶ 31} More significantly, subsequent to the decision in *Williams* and the time for filing briefs in this case, the Supreme Court rendered its decision in *State v. Burns*, ___Ohio St.3d___, 2022-Ohio-4606, in which the court addressed the applicability of *Smith* to the facts of a case in which counts not brought in juvenile court (and for which no probable cause determination was made by the juvenile court) were later charged in adult court and which were based on conduct that was in the juvenile court complaint. Specifically, the issue before the Supreme Court in that case was "whether the state must prove in juvenile court that there is probable cause to believe that a juvenile committed every act charged before the juvenile may be indicted for those acts in adult court." *Burns* at ¶ 1.

{¶ 32} Under the facts in *Burns*, 16-year-old Burns was charged in a 58-count indictment in juvenile court stemming from "a series of violent, theft-related offenses committed over a period of six months, each involving different places, victims and witnesses." *Id.* at ¶ 2. The state sought to transfer the case from the juvenile court to the

adult court and requested either a mandatory or a discretionary transfer. Following a probable-cause hearing, the juvenile court "found that the state had established probable cause to believe that Burns had committed the acts related to 42 of the 58 counts." *Id.* at ¶ 3. Further, after an amenability hearing, the juvenile court "granted the state's motion for discretionary bindover and transferred the case to adult court." *Id.* at ¶ 4.

{¶ 33} Upon transfer to adult court, a grand jury "returned a 56-count indictment against Burns that was similar to the 58-count complaint that was filed in juvenile court." *Id.* at ¶ 5. Burns later reached a plea agreement with the state in which he entered a guilty plea to 10 of the charges in the indictment. Burns appealed his convictions and sentence to the Eighth District Court of Appeals, and the reviewing court affirmed the judgment of the trial court. On further appeal to the Supreme Court, the parties were ordered to file supplemental briefs regarding the impact of its recent decision in *Smith*.

{¶ 34} In applying its holding in *Smith* to the facts in *Burns*, the Supreme Court initially addressed and reversed that portion of the appellate court's judgment affirming Burns's conviction on one of the counts, Count 29, because the juvenile court "determined that the act alleged in Count 29 was not supported by probable cause." *Id.* at ¶ 10.

{¶ 35} The Supreme Court next addressed Burns's assertion that "our holding in *Smith* is dispositive as to Counts 45 and 46 of the indictment (charging Burns with the attempted murders of Willie and Della Watts, respectively, on or about February 7, 2018) because those charges were not brought in juvenile court." *Id.* at ¶ 11. More specifically, Burns argued "that since the juvenile court never found probable cause regarding those counts, the adult court lacked jurisdiction over the counts and his convictions on them should be vacated." *Id.* In response, the state argued "an adult court is not limited to considering the specific acts charged in juvenile court and that imposing such a constraint would be inconsistent with the text of R.C. 2151.23(H), which governs the jurisdiction of a juvenile court." *Id.* at ¶ 12.

{¶ 36} The Supreme Court "agree[d]" with the state's argument "that an adult court is not necessarily limited to considering only the specific acts bound over from the juvenile court." *Id.* In this respect, "[a]fter a case has been transferred from a juvenile court to an adult court, the adult court 'has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in

that court.' " *Id.*, quoting R.C. 2151.23(H). Thus, "a grand jury is empowered to return an indictment on any charges supported by the facts submitted to it." *Id.* at ¶ 13, citing *State v. Adams*, 69 Ohio St.2d 120 (1982), paragraph two of the syllabus. While cautioning that "a grand jury may not consider additional charges arising from a different course of conduct or events that have not been properly bound over by the juvenile court," the Supreme Court recognized that "a case transferred from a juvenile court may result in new indicted charges in the adult court when the new charges are rooted in the acts that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred." *Id.*

{¶ 37} In applying that principle to the facts of the case, the Supreme Court affirmed Burns's convictions on Counts 45 and 46, i.e., the "attempted-murder offenses that were not charged in the juvenile-court complaint," as those offenses "were charged in the grand-jury indictment and were based on conduct that occurred on or about February 7, 2018—conduct that was in the juvenile complaint against Burns." *Id.*

{¶ 38} The holding in *Burns* is dispositive of appellant's contention that the transfer of jurisdiction in this case was limited only to acts for which probable cause was found in the juvenile court, and he could not have been indicted or convicted "for counts (offenses) for which probable cause was *not* found." (Emphasis sic.) (Appellant's Brief at 10.) Rather, *Burns* makes clear that, in accordance with R.C. 2151.23(H), a case transferred from juvenile court may result in "new indicted charges" (i.e., even in the absence of a probable-cause determination by the juvenile court) where such charges are "rooted in" (i.e., "based on") the acts (i.e., the "conduct or events") that were the subject of the juvenile complaint "but were not specifically named" in the acts transferred. *Burns* at ¶ 13. Correspondingly, appellant's reliance on the holding in *Williams*, decided prior to (and without the benefit of) *Burns*, and which fails to address the provisions of R.C. 2151.23(H), is not persuasive.

{¶ 39} As set forth under the facts, the juvenile complaint in this case alleged that appellant, while committing aggravated robbery, "stole property from the victim" and "then shot and killed the victim with a firearm." The juvenile complaint identified the victim as Parks, and alleged conduct occurring on March 12, 2005. The juvenile court found probable cause to believe appellant murdered and committed aggravated robbery against Parks, and transferred the case to adult court. In the subsequent grand jury indictment, each of the five counts brought in that indictment (including the theft and kidnapping

counts) alleged acts occurring on March 12, 2005 and involving the same victim (i.e., Parks).

{¶ 40} Appellant's suggestion that the kidnapping count was "not rooted in" any of the offenses for which probable cause was found in the juvenile court is wholly without merit, as that count was "based on conduct that occurred on" March 12, 2005, i.e., "conduct that was in the juvenile complaint against [appellant]." *Burns* at ¶ 13. In order to convict appellant of kidnapping, under R.C. 2905.01(A)(2), the state was required to prove that appellant restrained by force the victim (Parks) for the purpose of committing a felony (aggravated robbery). As noted under the facts, at trial the state presented evidence that appellant and Lewis attempted to persuade the victim to come outside of the mall to facilitate the robbery. When that attempt failed, they lured him into the bathroom and appellant held a gun to his chest and threatened to shoot him (i.e., restrained the liberty of the victim) with the purpose of committing a felony (robbery). Here, all of the newly indicted offenses, including the kidnapping charge, arose out of the charged acts and conduct that formed the basis of the transfer, i.e., the March 12, 2005 murder and robbery of Parks. Accordingly, and contrary to appellant's contention, the kidnapping count was "rooted in the acts that were the subject of the juvenile complaint." *Burns* at ¶ 13.

{¶ 41} Thus, as recognized by the trial court in denying the motion to "vacate void conviction," appellant's convictions were based on charges for which the juvenile court "found probable cause," and/or, pursuant to R.C. 2151.23(H), convictions for "either a lesser degree of, a lesser included offense[] of, or an offense different from the offense charged but * * * rooted in the offense that was the basis of the transfer." (Apr. 1, 2022 Decision & Entry at 2.) Further, because the instant case does not involve the "jurisdictional defects" found in *Smith*, the trial court properly determined appellant's convictions were not void. *State v. Taylor*, 2d Dist. No. 29422, 2022-Ohio-3579, ¶ 13 ("since [appellant] was bound over by the juvenile court after it had found probable cause for the two murder counts and the firearm specification (the only charges in the complaint before the juvenile court), [appellant's] case does not involve the jurisdictional defects identified in *Smith*").

{¶ 42} Upon review, the trial court did not err in denying appellant's motion to vacate void conviction. Accordingly, appellant's first and second assignments of error are without merit and are overruled.

**IV. Conclusion**

{¶ 43} Based on the foregoing, and having overruled appellant's two assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and BOGGS, JJ., concur.

———————————