OPINION
{¶ 1} In this appeal, Appellant Chad Barnette is challenging his jury conviction and sentence in the Mahoning County Court of Common Pleas on eleven counts, which include attempted aggravated murder, kidnapping, aggravated burglary, aggravated robbery, felonious assault, and receiving stolen property. Appellant contends that there were errors in the bindover proceeding from juvenile court, in the trial court's alleged failure to merge certain offenses, and in sentencing. We partially agree with Appellant, in that there were errors made during the sentencing phase of the proceedings. Thus, the sentence is modified pursuant to the reasons set forth in this Opinion.
 FACTUAL BACKGROUND AND PROCEDURAL HISTORY {¶ 2} Appellant's conviction arose from events which occurred on January 29, 2001. On that day, Appellant, along with co-defendant James Goins, attacked William Sovak, age 84, as he was picking up his daily newspaper outside his home in Youngstown, Ohio. Appellant and Goins were both juveniles at the time. The two assailants repeatedly pushed, hit, and kicked Mr. Sovak, knocking him to the ground many times. They hit Mr. Sovak on the head with his telephone. They took Mr. Sovak to his kitchen, while continuing to beat him. They found a set of keys in the kitchen, which they took. They then pushed Mr. Sovak down the stairs to his basement, where he lost consciousness. Later, the assailants dragged Mr. Sovak to a fruit cellar storage room in the basement and locked the door so that he could not escape. That evening, a neighbor of Mr. Sovak telephoned Jerome Jablonski (the victim's halfbrother) to report that there was blood all over Mr. Sovak's house. Mr. Jablonski and his brother went to the house and found a trail of blood from the front door to the basement. Mr. Jablonski broke the lock on the fruit cellar and found Mr. Sovak inside. Sovak had sustained a punctured lung, broken ribs and other broken bones.
 {¶ 3} Also on January 29, 2001, Louis Luchisan, age 64, and his wife Elizabeth, were in their home in the same neighborhood as Mr. Sovak. Mr. Luchisan, who was confined to a wheelchair, was working at his computer when Appellant and Goins kicked in the side door of his house. One of the men was carrying a firearm. The two assailants asked for money. They then hit Mr. Luchisan over the head with a plate. Mrs. Luchisan saw blood flowing down her husband's head and shirt from the injury. Appellant and Goins took Mrs. Luchisan to various rooms in the house looking for money. Mrs. Luchisan gave them about $167, while Mr. Luchisan gave them $20. Appellant, the taller of two assailants, began hitting Mrs. Luchisan in the head and legs with the gun. They also hit Mrs. Luchisan with a telephone, and threatened to kill her. She later had to have staples put into her head as a result of the injuries.
 {¶ 4} Appellant and Goins took the Luchisans' car, as well as a 27-inch television set. The police were notified to be on the lookout for the stolen vehicle.
 {¶ 5} The car was spotted as the police were still inspecting the two crime scenes. Officer Joshua M. Kelly, who was on foot, saw the vehicle and pulled out his service firearm. The car suddenly veered and crashed into a tree. There were four people in the car, including Appellant in the back seat and Goins in the front passenger seat. Officers also found a sawed-off rifle in the vehicle, similar in appearance to the weapon used at the Luchisan home. Goins fled the car after the crash, and was captured soon afterward.
 {¶ 6} Police found the keys to the Sovak's home when they were searching Goins' home. The tread of Appellant's shoes also matched shoe tread marks that were left at the crime scene.
 {¶ 7} On February 5, 2001, a juvenile delinquency complaint was filed against Appellant alleging twelve counts, including the attempted murder, aggravated burglary, aggravated robbery, kidnapping, felonious assault, and receiving stolen property. The state filed a motion to transfer the case to the adult division of the Mahoning County Court of Common Pleas. After a bindover hearing, the juvenile court found probable cause for all the offenses except for the kidnapping charges. The juvenile court then bound the case over to the Mahoning County Grand Jury.
 {¶ 8} On March 22, 2001, the Mahoning County Grand Jury indicted Appellant on: 1) attempted aggravated murder of Mr. Sovak; 2) aggravated burglary of Mr. Sovak; 3) aggravated robbery of Mr. Sovak; 4) kidnapping of Mr. Sovak; 5) aggravated burglary of the Luchisans; 6) aggravated robbery of Mr. Luchisan; 7) aggravated robbery of Mrs. Luchisan; 8) kidnapping of Mr. Luchisan; 9) kidnapping of Mrs. Luchisan; 10) felonious assault of Mr. Luchisan; 11) felonious assault of Mrs. Luchisan; 12) and receiving stolen property, i.e., the Luchisans' automobile. Four of the counts contained gun specifications. The court consolidated the matter with the criminal case proceeding against co-defendant James Goins.
 {¶ 9} On November 28, 2001, Appellant and Goins filed writs of habeas corpus with this Court, challenging whether the Mahoning County Court of Common Pleas, General Division, had jurisdiction over the criminal charges that were not bound over from the juvenile division. Goins v.Wellington, 7th Dist. Nos. 01 CA 208, 01 CA 210, 2001-Ohio-3503 (Goins I). We denied both writs on December 18, 2001, and the case proceeded to jury trial beginning on March 4, 2002.
 {¶ 10} On March 12, 2002, the jury found Appellant guilty as charged except on the one count of felonious assault against Mrs. Luchisan. The jury also found Appellant guilty of the gun specifications in counts six, seven, eight and nine.
 {¶ 11} A sentencing hearing was held on March 20, 2002. The trial court filed its judgment entry on March 21, 2002. The court sentenced Appellant to the maximum prison terms on each count, and three years in prison on each gun specification. The court held that the kidnapping charges, and related gun specifications, merged with the robbery charges. The court also determined that all remaining sentences must be served consecutively to each other, for a total of 85 1/2 years in prison. This appeal was filed on March 27, 2002.
 {¶ 12} The appeal was fully briefed on May 15, 2003. Appellant asserted two assignments of error. Prior to our scheduling of oral argument, Appellant's counsel moved to withdraw from the case, and we appointed new counsel. Appellant's substitute counsel filed a supplemental brief on January 20, 2004, adding two new assignments of error. Appellee has filed supplemental response to these additional assignments of error. Oral argument on these four assignments of error was held on April 28, 2004. While our Opinion was being prepared for final draft, Appellant filed a motion for leave to file a fifth assignment of error, alleging that Ohio's felony sentencing scheme is unconstitutional. On August 23, 2004, we permitted Appellant to file a supplemental fifth assignment of error, to which Appellee has responded. Oral argument was waived on the fifth assignment of error.
 ASSIGNMENTS OF ERROR {¶ 13} Appellant's first assignment of error asserts:
 {¶ 14} "The court erred when it failed to dismiss counts four (4), eight (8) and nine (9) of the indictment. The court was without jurisdiction to proceed since no proper transfer proceedings from the juvenile court occurred."
 {¶ 15} Appellant argues that a juvenile court has exclusive jurisdiction over any child who is alleged to be a delinquent for committing acts that would constitute a felony if committed by an adult. See R.C. § 2151.23(A), § 2151.26(A). Appellant argues that the general division of the Mahoning County Court of Common Pleas did not have jurisdiction to prosecute him for the kidnapping offenses because those charges were not bound over from the juvenile division of the court. According to Appellant, the juvenile court retained exclusive jurisdiction over the kidnapping charges because it did not find probable cause to bind the charges over to the general division. Without a valid bindover, Appellant contends, the juvenile court retains exclusive jurisdiction over the charges and the child. R.C. § 2151.26(E); see alsoState v. Wilson (1995), 73 Ohio St.3d 40, 44, 652 N.E.2d 196.
 {¶ 16} We must first point out that this issue was previously raised in Appellant's habeas proceedings, resulting in the Goins I Opinion. InGoins I, Appellant filed a writ of habeas corpus based, in part, on the theory that the general division of the court of common pleas lacked jurisdiction over the three kidnapping charges because those charges were not bound over from juvenile court. We held that a habeas action was not the proper forum to litigate the issue of whether the grand jury properly indicted Appellant on the kidnapping charges, and that the matter was not properly before us. Goins I at *5. Now that Appellant has properly raised the issue on direct appeal, we may address the matter.
 {¶ 17} The record of this case indicates that on February 28, 2001, the Juvenile Court transferred jurisdiction of the entire juvenile case over to the general division of the court of common pleas. The judgment entry gives no indication that it intended to retain jurisdiction over the kidnapping charges. The judgment entry, though, does state that the court "makes no probable cause finding of Kidnapping" as set forth in counts 4, 8, and 9 of the juvenile complaint.
 {¶ 18} In Goins I, we offered an interpretation of the juvenile court's language when it stated that it was not making a probable cause finding concerning the kidnapping counts:
 {¶ 19} "Rather than make a discretionary probable cause decision, the juvenile court actually made a statement of the law on kidnapping by saying that pushing a man into his house when he steps outside, dragging him around the house, and locking him in a fruit cellar is not kidnapping because it occurred on his own property where he was first found by the offenders. The court also decided that kidnapping is not committed when offenders drag a woman around the house in search of money and force her husband to stay in a room while the search was conducted. Because of the court's legal construction of the definition of kidnapping, these counts were not bound over." Id. at *5.
 {¶ 20} The Ohio Supreme Court has repeatedly made it clear that, absent a valid bindover procedure, the juvenile court retains exclusive jurisdiction over any case involving a delinquent child. See State v.Golphin (1998), 81 Ohio St.3d 543, 544-545, 692 N.E.2d 608, and State v.Wilson (1995), 73 Ohio St.3d 40, 652 N.E.2d 196, paragraph one of the syllabus.
 {¶ 21} In Appellant's view, the juvenile court did not specifically bind over the kidnapping charges and, therefore, did not relinquish jurisdiction over those charges.
 {¶ 22} Appellee argues in rebuttal that a grand jury has authority to consider charges that are related to or that arise from the charges that are transferred from a juvenile court, citing as authority our recent holding in State v. White, 7th Dist. No. 01-JE-3, 2002-Ohio-5226. InWhite, the juvenile was charged with aggravated murder with a death specification, and aggravated burglary. The juvenile court held a bindover hearing and found that there was probable cause on the aggravated murder charge. The juvenile court bound the case over to the general division of the Jefferson County Court of Common Pleas. The juvenile court did not specifically bind over the aggravated burglary charge. Id. at ¶ 35.
 {¶ 23} Soon afterward, the juvenile was indicted by the grand jury on charges of aggravated murder, aggravated burglary, aggravated robbery, aggravated arson, tampering with evidence, escape, and assault. The juvenile later pleaded guilty to aggravated murder, aggravated burglary, aggravated robbery, and escape.
 {¶ 24} On appeal to this Court, the juvenile argued that he could not be convicted of aggravated burglary or aggravated robbery because those charges were not bound over from the juvenile court.
 {¶ 25} White cited former R.C. § 2151.23(H) to demonstrate that the general division of the court of common pleas could prosecute a juvenile for crimes that were not included in the bindover from juvenile court:
 {¶ 26} "If a child who is charged with an act that would be an offense if committed by an adult * * * is transferred for criminal prosecution * * *, the juvenile court does not have jurisdiction to hear or determine the case subsequent to the transfer. The court to which the case is transferred for criminal prosecution pursuant to that section has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in that court, including, but not limited to, jurisdiction to accept a plea of guilty * * * and to enter a judgment of conviction pursuant to the Rules of Criminal Procedure against the child for the commission of the offense that was the basis of the transfer of the case for criminal prosecution, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offence, or forthe commission of another offense that is different from the offensecharged. (Emphasis added.)" Id. at ¶ 37.
 {¶ 27} White held that under R.C. § 2151.23(H), a common pleas court may charge a juvenile with offenses that are different than those charged in juvenile court if the additional charges arise out of, or are derived from, the offenses that were the basis of the transfer from juvenile court. Id. at ¶ 42. In White, we held that the aggravated murder charge that was the basis of the bindover included, as an essential element of the crime, that the crime occurred, "while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, * * * aggravated robbery or robbery, [or] aggravated burglary[.]" Id. at ¶ 41; R.C. § 2903.01(B). We concluded that the crimes of aggravated robbery and aggravated burglary were derived from the aggravated murder charge that was bound over from juvenile court, and as such, were permissible additional charges in the grand jury indictment. Id. at ¶ 46.
 {¶ 28} In prior years, once a juvenile was bound over to the general division of the court of common pleas, the juvenile court lost all jurisdiction to prosecute existing and future criminal charges against that juvenile:
 {¶ 29} "1. Once a juvenile is bound over in any county in Ohio pursuant to R.C. 2151.26 and Juv. R. 30, that juvenile is bound over for all felonies committed in other counties of this state, as well as for future felonies he may commit.
 {¶ 30} "2. When a minor is transferred from the Juvenile Court to the Court of Common Pleas on a charge which would constitute a felony if committed by an adult, the grand jury is empowered to return any indictment under the facts submitted to it and is not confined to returning indictments only on charges originally filed in the Juvenile Court." State v. Adams (1982), 69 Ohio St.2d 120, 23 O.O.3d 164,431 N.E.2d 326, paragraphs one and two of the syllabus.
 {¶ 31} The Ohio legislature expressly repudiated the Adams holding in a subsequent revision to the juvenile bindover statutes in Am. Sub. H.B. No. 1, 146 Ohio Laws, Part I, effective January 1, 1996, and in subsequent revisions. The legislative notes to R.C. § 2151.011 state:
 {¶ 32} "1995 H 1, § 3, eff. 1-1-96, reads in part: (B) The General Assembly hereby declares that its purpose in enacting the language in division (B) of section 2151.011 and divisions (B) and (C) of section 2151.26 of the Revised Code that exists on and after the effective date of this act is to overrule the holding in State v. Adams (1982),69 Ohio St. 2d 120, regarding the effect of binding a child over for trial as an adult."
 {¶ 33} It is not absolutely clear what part of the Adams opinion that the legislature intended to overrule in its 1995 revisions. Many courts continue to apply the holding of paragraph two of the syllabus of Adams.
"The longstanding rule in Ohio is that upon transfer from juvenile court, the grand jury is authorized to return a proper indictment on the facts submitted to it, and is not confined to the charges originally filed in the juvenile court." State v. Walker (Sept. 28, 1999), 5th Dist. No. 99 CA 2, citing Adams, supra, paragraph two of the syllabus. "[T]he grand jury was within its power to indict appellant for counts that were not alleged in the juvenile proceedings." State v. Whisenant
(1998), 127 Ohio App.3d 75, 81, 711 N.E.2d 1016, fn. 4, citingAdams, paragraph two of the syllabus. "It is well established in Ohio jurisprudence that upon transfer from juvenile court, a grand jury is authorized to return a proper indictment on the facts submitted to it, and is not confined to the charges originally filed in the juvenile court." State v. Duncan (Sept. 12, 2001), 9th Dist. No. 3117-M, citingAdams, paragraph two of the syllabus. In Goins I, we also agreed that the 1996 changes to the juvenile bindover statutes were only meant to overrule paragraph one of the syllabus of Adams. See Goins I, at *5.
 {¶ 34} The version of R.C. § 2151.26 in effect at the time of the 2001 bindover hearing contained the following provisions:
 {¶ 35} "(F) Upon the transfer of a case for criminal prosecution to the appropriate court having jurisdiction of the offense under division (B) or (C) of this section, the juvenile court shall state the reasons for the transfer * * *. The transfer abates the jurisdiction of thejuvenile court with respect to the delinquent acts alleged in thecomplaint, and, upon the transfer, all further proceedings pertaining to the act charged shall be discontinued in the juvenile court, and the case then shall be within the jurisdiction of the court to which it is transferred as described in division (H) of section 2151.23 of the Revised Code." (Emphasis added.)
 {¶ 36} R.C. § 2151.26(F) transfers jurisdiction with respect to "delinquent acts" and not merely with respect to the charges that were filed in juvenile court related to those delinquent acts.
 {¶ 37} In the instant case, the juvenile court did not believe that the delinquent acts that occurred on January 29, 2001, established probable cause for the three kidnapping charges that were part of the juvenile complaint. Nevertheless, the juvenile court clearly transferred the entire case to the general division of the Mahoning County Court of Common Pleas: "The Court having found probable cause that nine (9) felonies have been committed herein and that Count #1 is a Category one offense and Counts #6 and #7 are Category two offenses, IT IS THEREFOREORDERED that pursuant to ORC 2151.26 (B), the matter herein is transferred to the General Trial Division of the Mahoning County Common Pleas Court for further proceedings pursuant to law." (2/28/02 J.E.)
 {¶ 38} The charges that were issued by the grand jury were based on the same delinquent acts under review in the juvenile court, the only difference being that the grand jury found that those acts also formed the basis of three counts of kidnapping. The kidnapping charges were based on the events occurring on January 29, 2001, at the residences of Mr. Sovak and Mr. and Mrs. Luchisan, and do not involve any additional circumstances beyond those that were under review in the juvenile court. Therefore, the grand jury was free to indict Appellant on charges arising out of those circumstances, even though the juvenile court did not specifically transfer those charges when it bound the case over to the general division of the court of common pleas.
 {¶ 39} For all the above reasons, we overrule Appellant's first assignment of error.
 {¶ 40} Appellant's second assignment of error asserts:
 {¶ 41} "The trial court committed prejudicial error when it failed to merge, for the purpose of sentencing, count six (6), aggravated robbery of Louis Luchesan [sic] with count twelve (12), receiving stolen property (Luchesan's [sic] car taken during his robbery) since they were allied offense [sic] of similar import."
 {¶ 42} Appellant contends that the act of robbing a car from the Luchisans and the act of receiving that car as stolen property cannot be viewed as two separate crimes. Thus, he argues that he should not have been sentenced on both offenses. Appellee argues in rebuttal that this argument was waived when Appellant failed to object at trial to the convictions or the corresponding sentences.
 {¶ 43} This Court has previously held that a defendant who fails to raise the issue of allied offenses of similar import at trial has waived that issue on appeal, unless there is plain error. State v. Johnson
(Dec. 6, 2000), 7th Dist. No. 2000-CO-1; see also Crim. R. 52(B). Plain error may only be found, "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.
 {¶ 44} The allied-offense statute, R.C. § 2941.25, provides:
 {¶ 45} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 46} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 47} R.C. § 2941.25 protects a defendant from being convicted twice for the same offense. This would violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. State v. Rance
(1999), 85 Ohio St.3d 632, 636, 710 N.E.2d 699. Crimes are allied offenses of similar import if the elements of the crimes correspond to such a degree that the commission of one crime will necessarily result in the commission of the other. Id. When making this determination, the court should not consider the particular facts of the case, but should consider only the statutory elements of the two crimes in the abstract. Id. at paragraph one of the syllabus. If each offense requires proof of an element that the other does not, then they are not allied offenses of similar import. Id. at 639. If the elements of the two crimes do correspond with each other, the court must then review the defendant's conduct to determine if the offenses were committed separately or with a separate animus as to each offense. State v. Jones (1997),78 Ohio St.3d 12, 14, 676 N.E.2d 80.
 {¶ 48} Appellant was convicted of aggravated robbery and receiving stolen property. Aggravated robbery, under R.C. § 2911.01(A)(2), is defined as having a dangerous ordnance on or about the offender's person or under the offender's control when attempting or committing a theft offense or fleeing immediately after the attempt or offense. Receiving stolen property, under R.C. § 2915.51(A), is defined as receiving, retaining, or disposing of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 {¶ 49} "It is hornbook law that a thief cannot be charged with committing two offenses — that is, stealing and receiving the goods he has stolen. E.g., Cartwright v. United States, 146 F.2d 133; State v.Tindall, 213 S.C. 484, 50 S.E.2d 188; see 2 Wharton, Criminal Law and Procedure, Section 576; 136 A.L.R. 1087. And this is so for the commonsensical, if not obvious, reason that a man who takes property does not at the same time give himself the property he has taken. In short, taking and receiving, as a contemporaneous — indeed a coincidental — phenomenon, constitute one transaction in life and, therefore, not two transactions in law. * * *" State v. Wilson (2001), 145 Ohio App.3d 374,378, 763 N.E.2d 196, quoting Maumee v. Geiger (1976), 45 Ohio St.2d 238,74 O.O.2d 380, 344 N.E.2d 133.
 {¶ 50} The Ohio Supreme Court has also issued the following related holding:
 {¶ 51} "[W]e conclude that although, as to the principal offender who steals a motor vehicle, any acts of receiving or concealing the same motor vehicle knowing it to have been stolen are considered merged into the crime of auto theft itself, so as to preclude separate sentences for a violation of R.C. 4549.04 (auto theft) and R.C. 2907.30 (receiving or concealing stolen property), it is not error to permit a jury to return verdicts of guilty as to both offenses, if otherwise warranted by the evidence, and for the court to then impose only the sentence provided for auto theft and to dismiss the charge of receiving or concealing stolen property." State v. Botta (1971), 27 Ohio St.2d 196, 204, 271 N.E.2d 776.
 {¶ 52} It is clear from the record that the vehicle that Appellant was accused of receiving under the receiving stolen property charge was the vehicle that was stolen as part of the aggravated robbery charges. Although the two crimes are technically distinct, it has been the consistent and longstanding rule in Ohio that a defendant cannot be sentenced for both a theft crime and a receiving stolen property crime based on the same stolen property. Thus, the trial court should not have imposed an additional sentence on the receiving stolen property conviction. Appellant's second assignment of error is sustained.
 {¶ 53} Appellant's third assignment of error asserts:
 {¶ 54} "The trial court's determination of Chad Barnette's 85.5 year term of incarceration violated the Due Process Clause of the United States Constitution because it had been fixed by anticipatory judgment months in advance of trial and was explicitly weighed to punish Mr. Barnette for exercising his right to a jury trial. (5/17/01 Pretrial Tr. 14 and Sentencing Tr. at 35-36)."
 {¶ 55} Appellant argues that his sentence constitutes a due process violation for two reasons. First, he claims that the trial judge's remarks at a pretrial hearing demonstrate that the trial court was biased against him. Second, he contends that the trial court imposed a harsher sentence upon him for exercising his right to trial. We will deal with each issue in turn.
 {¶ 56} Appellant tries to prove that the trial court was biased against him by referring to certain comments that the judge made at a pretrial hearing on May 17, 2001:
 {¶ 57} "* * * I'm not the kind of guy who changes my mind. You know, once-once this is set, it's set and we're going to do it, and if that doesn't work out for you, well, that's too bad. So you better be ready for the prosecution and you better be ready for me, you better be ready for a jury, you better be ready to work with your lawyer." (5/17/01 Tr., p. 10.)
 {¶ 58} The context of the quoted section of the transcript indicates that the trial judge was explaining the consequences of Appellant's insistence on going to trial just two months after he was indicted, particularly in light of the fact that Appellant's counsel had just filed for a continuance because he was not ready for trial. It is apparent that Appellant did not grasp the gravity of his situation. The trial court's comments do not demonstrate that it was prejudiced against Appellant or that it anticipated a particular sentence. Appellant's due process argument is completely without merit.
 {¶ 59} Appellant's second argument is that he was punished for exercising his right to trial. Appellant bases his argument on the fact that the prosecution had offered to enter into a Crim. R. 11 plea agreement with him in which the state would recommend a total sentence of 23 years in prison on all counts in the indictment. Appellant did not accept this plea agreement. At the conclusion of trial, the prosecution recommended that Appellant be sentenced to maximum consecutive sentences on all counts. In response, Appellant's counsel argued that maximum consecutive sentences were inappropriate. Counsel argued: "If 23 years was sufficient time to insulate the public from him two weeks ago, why isn't it sufficient time today?" (3/20/02 Tr., p. 21.) The trial court responded to these comments by stating:
 {¶ 60} "When the prosecutor asked for maximum consecutive sentences, although the defense finds fault with that, I find no fault with their recommendation or understanding their recommendation. This Court particularly is of the opinion that when someone admits to his wrongdoing and steps up to the plate and says, I did these things, I'm sorry for what I did and I ask for mercy, then mercy is appropriate because the first step towards rehabilitation has taken place. But when someone says I didn't do anything wrong, I deny that I did any of these things that have been charged against me but for being caught in the vehicle that you had to admit being caught in, then mercy's not appropriate. When 12 people from this community have to be brought in here and have the evidence presented to them and they unanimously agree without any question whatsoever that not only did you commit this receiving stolen property, but you each committed ten other outrageous criminal offenses, then the State would not be justified in coming in here saying, let's give them the deal we offered them. The State should come in and say now they deserve to be punished." (3/20/02 Tr., pp. 35-36.)
 {¶ 61} Appellant cites this section of the sentencing transcript to demonstrate that the trial court had predetermined before trial that the final sentence would be more severe because Appellant exercised his right to go to trial. Appellant's argument is not persuasive.
 {¶ 62} It is true that a criminal defendant should not be punished solely for choosing to go to trial, or for refusing to enter into a plea agreement. State v. O'Dell (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220, paragraph two of the syllabus. This type of punishment would create a chilling effect on a defendant's ability to exercise his or her constitutional right to a trial. State v. Scalf (1998),126 Ohio App.3d 614, 621, 710 N.E.2d 1206; United States v. Derrick
(C.A. 6, 1975), 519 F.2d 1, 3.
 {¶ 63} There are legitimate reasons, though, why a trial court may sentence a defendant more harshly after a trial on the merits than the court might have done in response to a plea bargain. First, the United States Supreme Court has recognized the propriety of offering a more lenient sentence in exchange for a guilty plea. Corbitt v. New Jersey
(1978), 439 U.S. 212, 221-224, 99 S.Ct. 492, 58 L.Ed.2d 466. A more lenient sentence is proper because, as the trial court correctly observed the defendant's acknowledgment of guilt shows a willingness to assume responsibility for one's conduct and is an important step toward rehabilitation. Brady v. United States (1970), 397 U.S. 742, 753,90 S.Ct. 1463, 25 L.Ed.2d 747.
 {¶ 64} Second, a trial court usually knows much more about the facts of the case after trial than it does at the time of a pretrial plea hearing. This added knowledge will "almost inevitably * * * affect the judge's consideration of what penalty appears most appropriate."Derrick, 519 F.2d at 4. The fact that a sentence imposed after trial is greater than the recommended sentence at a plea hearing prior to trial may simply reflect the court's greater understanding of the crime and its impact on the victims, rather than judicial bias.
 {¶ 65} After examining the record, we conclude that the comments made by the trial judge do not demonstrate that Appellant received an enhanced sentence merely because he chose to proceed to a trial on the merits. It is apparent that many of the trial court's statements were proper responses to arguments raised by defense counsel at the sentencing hearing. For example, counsel argued that the more modest sentencing recommendation that the State offered during plea negotiations proved that maximum consecutive sentences were inappropriate. The trial judge responded by stating that the State may have interpreted Appellant's willingness to enter a plea agreement as an acknowledgment of guilt and a beginning of the rehabilitation process. After trial, though, it became clear that the crimes Appellant committed were, as the court stated, "outrageous" and that severe punishment was more appropriate. The court was not punishing Appellant for going to trial, even though the court took into account the facts that were revealed at trial. The evidence that Appellant relies on does not demonstrate that Appellant received an enhanced sentence in retaliation for exercising his constitutional right to a jury trial, and his third assignment of error is overruled.
 {¶ 66} Appellant's fourth assignment of error asserts:
 {¶ 67} "The trial court's determination of Chad Barnette's 85.5 year sentence was entered in violation of R.C. 2929.11(B), R.C. 2929.14, and R.C. 2929.19, because the trial court based its imposition of maximum, consecutive sentences on inappropriate criteria and in violation of Ohio law and due process. (Sentencing Tr. at 33-51)."
 {¶ 68} Appellant sets forth three reasons why this case should be remanded for resentencing: 1) the trial court arbitrarily imposed a total sentence of 85.5 years in prison because he wanted the sentence to match the age of one of the victims; 2) the trial court did not provide particularized findings proving that each and every count was the worst form of each offense; and 3) the sentence of 85.5 years in prison was not consistent with sentences rendered in similar cases in Ohio, in violation of R.C. § 2929.11(B).
 {¶ 69} A court of appeals no longer applies an abuse-of-discretion standard when reviewing a felony sentence. State v. Cloud (Sept. 26, 2001), 7th Dist. No. 98-CO-51. Our standard of review is governed by R.C. § 2953.08(G), which provides:
 {¶ 70} "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
 {¶ 71} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 72} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 73} "(b) That the sentence is otherwise contrary to law."
 {¶ 74} R.C. § 2929.11 sets forth the overriding purposes of felony sentencing to guide the sentencing court. "* * * The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. § 2929.11(A).
 {¶ 75} We first note that the trial court correctly merged the sentences for kidnapping and robbery so that the sentences would run concurrently. It is axiomatic in Ohio that a kidnapping charge arising out of a robbery merges with that robbery charge unless there is a separate animus for the kidnapping. State v. Fears (1999),86 Ohio St.3d 329, 344, 715 N.E.2d 136. The reason for this holding is that, "implicit within every robbery (and aggravated robbery) is a kidnapping." State v. Jenkins (1984), 15 Ohio St.3d 164, 198,15 OBR 311, 473 N.E.2d 264, fn. 29.
 {¶ 76} The trial court also correctly merged the firearm specifications for each set of crimes that were committed together at the same time. R.C. § 2929.14(D)(1)(b) allows for the merger of firearm specifications in certain situations. It provides, "[a] court shall not impose more than one prison term on an offender under division (D)(1)(a) of this section for felonies committed as part of the same act or transaction." R.C. 2929.14(D)(1)(b). The aggravated robbery and kidnapping of Mr. Luchisan were part of the same criminal transaction, as was the aggravated robbery and kidnapping of Mrs. Luchisan. Thus, the court properly merged the firearm specifications on these convictions.
 {¶ 77} R.C. § 2929.12 lists various factors for the court to consider when imposing a sentence, including factors relating to the seriousness of the offense and the likelihood that the defendant will commit future crimes. R.C. § 2929.12(B) introduces a list of factors that relate to the seriousness of the crime:
 {¶ 78} "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense: * * *"
 {¶ 79} Under the catch-all provision of R.C. § 2929.12(B), the trial court is permitted to consider any relevant factor that would indicate the seriousness of the crime. Appellant takes issue with the trial court's reference to the specific ages of the victims as relevant factors in sentencing. Appellant insists that the trial court arbitrarily tried to match the total length of the prison sentence to correspond to the ages of the victims. Specifically, Appellant finds reversible error in the following comment by the trial court: "And so it's my intention, gentlemen, to give you at least one year in jail for every year of the life of the man who you tried to kill and these other people who you terrorized * * *." (3/20/02 Tr., p. 44.)
 {¶ 80} Appellee, in rebuttal, observes that the aforementioned comments by the trial judge were made after he had already made all the findings necessary to impose sentence. The court had already examined the sentencing factors in R.C. § 2929.12, and determined that two factors were present: (1) the injury was exacerbated by the physical and mental condition or age of the victims and (2) the victims suffered serious physical, psychological, or economic harm. (3/20/02 Tr., pp. 39-40.) These findings complied with R.C. 2929.12(B)(1) and (2). The court then stated:
 {¶ 81} "The other factors that are appropriate or that, or that are mentioned under that section of the code are not appropriate except forany other relevant factors indicating conduct is more serious. Those factors included the fact that you acted as a group and you terrorized multiple victims, and then you celebrated the crimes that you committed * * *." (Emphasis added.) (3/20/02 Tr., p. 40).
 {¶ 82} It was only after the court had made all these appropriate findings that it concluded that sentence would correspond to the age of the oldest victim. Based on the context of the trial court's comments, it does not appear that the age of the victims was improperly used as a factor in sentencing.
 {¶ 83} Appellant also contends that the trial court was required to give particular reasons explaining why each and every count was the worst form of each specific offense. Under R.C. § 2929.14(C), the trial court must make at least one of four possible findings to justify imposing a maximum sentence. One of those possible findings is that the offense was the worst form of the offense. The court must also give reasons to support those findings. R.C. § 2929.19(B)(2)(d). In the instant case, the trial court justified its decision to impose maximum sentences based on its conclusion that each crime was the worst form of the offense. (3/20/02 Tr., p. 43.)
 {¶ 84} Appellant cites three cases to support his view that the trial court needed to give separate reasons why each particular count was the worst form of the offense in order to support the imposition of maximum sentences for each offense. Appellant first cites State v. Longnecker
(June 7, 2002), 4th Dist. No. 01CA2. The defendant in Longnecker received a four-year sentence on one count of gross sexual imposition, which is a third degree felony punishable by up to five years in prison. Longnecker
does not deal with maximum sentences and is inapposite to the instant appeal.
 {¶ 85} The second cite is to State v. Watkins (Aug. 31, 2002), 2nd Dist. No. 2000-CA-21. The defendant in Watkins appealed the court's imposition of maximum sentences on one count of rape and one count of gross sexual imposition, which were to be served concurrently. The Second District Court of Appeals remanded the case for resentencing because the trial court provided no explanation whatsoever for imposing the maximum sentence for the rape conviction. The Watkins case does not discuss whether or not the court should have given separate reasons for the sentences it imposed for each of the two counts. The only section of theWatkins case that Appellant cites does not deal with sentencing at all, but rather, is part of the discussion concerning whether the defendant was a sexual predator. The Watkins case is, therefore, also inapposite to the instant appeal.
 {¶ 86} The third case Appellant cites is State v. Akerman (Nov. 10, 1999), 3rd Dist. No. 5-99-32, 5-99-33. The defendant in Akerman was convicted of two charges of felony domestic violence, both of which were fifth degree felonies. The defendant received two sentences of 11 months, to be served consecutively. On appeal, the defendant conceded that the trial court had made the necessary findings to support consecutive sentences. The argument on appeal, though, was that the findings did not apply to either count because the trial court did not recite the findings for each count separately. The Third District Court of Appeals affirmed the sentence because it found that the trial court's findings applied to both counts:
 {¶ 87} "[I]t is clear that the trial court's findings were intended to apply to both charges unless it stated otherwise, which it did on several occasions. The defendant's proposed rule, which would require the trial court to make that finding twice in the same hearing, is not mandated by the sentencing statutes and serves no legitimate sentencing purpose." Id. at p. *3.
 {¶ 88} The court's holding in Akerman is the opposite of the position taken by Appellant, and we agree with the analysis in Akerman. Appellant has not presented any other authority establishing a need for the trial court to give separate reasons supporting those findings for every related count in a multiple count sentencing hearing. Just as in theAkerman case, it is clear in the instant case that the trial court's findings and explanations were meant to apply to all related charges.
 {¶ 89} Our review of the record, though, has uncovered a related error with respect to the court's imposition of maximum sentences. The record reveals that the trial court failed to make the required findings to justify the maximum sentence on the aggravated robbery of Mr. Sovak and on the receiving stolen property charge. We will limit our discussion to the aggravated robbery charge, because we have already determined (under assignment of error number two) that the trial court should not have sentenced Appellant on the receiving stolen property charge.
 {¶ 90} The transcript of the sentencing hearing contains a list of the counts which constituted the worst form of the offense. (3/20/02 Tr., p. 43.) As we noted earlier, the court justified imposing maximum sentences because he found the counts in the indictment constituted the worst form of the offense, pursuant to the requirements of R.C. § 2929.14(C). The trial judge failed to list the aggravated robbery of Mr. Sovak as one of the offenses for which Appellant committed the worst form of the offense. The trial judge did not list any other basis for imposing the maximum sentence on Appellant for this crime. For this reason, we sustain Appellant's fourth assignment of error with respect to the sentence imposed for the aggravated robbery of Mr. Sovak.
 {¶ 91} Appellant further argues, under assignment of error number four, that the 85.5 year sentence was disproportionate to other sentences for similar crimes. Appellant refers to seven cases to demonstrate the disproportionality of his sentence, but we are not persuaded by the authorities that have been cited.
 {¶ 92} State v. Duvall, 8th Dist. No. 80316, 2002-Ohio-4574, was the result of a negotiated plea and is not comparable to the instant case, which was the result of the jury trial. The same is true for three other cases cited by Appellant: State v. Walker, 1st Dist. No. C-030159,2003-Ohio-7106; State v. Nelson, 11th Dist. No. 2001-A-0076, 2002-Ohio-6701, and State v. Hunter, 8th Dist. No. 81106, 2003-Ohio-994.
 {¶ 93} State v. Bragenzer, 4th Dist. No. 01CA15, 2002-Ohio-6156, was also the result of a negotiated plea. More importantly, the defendant inBragenzer received maximum consecutive sentences on two first degree felony counts. The sentences imposed and affirmed in Bragenzer would actually support the sentences imposed in the instant case.
 {¶ 94} State v. Dillon, 4th Dist. No. 01CA54, 2002-Ohio-4990, is somewhat comparable to the instant case. The defendant was convicted of aggravated burglary, as well as three complicity charges of felonious assault, aggravated robbery and kidnapping. The defendant helped two accomplices to break into a neighbor's home and steal $1000. The accomplices hit the victim with a flashlight, and the defendant tripped the victim as he tried to escape. The defendant received 36 years of a possible 38-year prison sentence. Some of the sentences, though, were ordered to be served concurrently, for a total sentence of 20 years. This is roughly half of what Appellant received on similar charges.
 {¶ 95} State v. Jeffries (March 22, 2001), 8th Dist. No. 76880, involved a conviction for gross sexual imposition and abduction, which are not comparable to the convictions in the instant case, and thus, cannot be applied to determine appropriate sentences for the crimes under review in this appeal.
 {¶ 96} Appellant has presented only one case that appears to support his theory. One of the cases cited actually supports the imposition of maximum consecutive sentences. The other cases were the result of plea agreements, and thus cannot easily compare with sentencing after a jury trial. The fact that Appellant has only produced one case in which a criminal defendant received a less severe sentence for similar crimes is indicative that the maximum consecutive sentences under review in this appeal were not disproportionate to other similar convictions and sentences in Ohio. We find no merit in Appellant's third argument under this assignment of error.
 {¶ 97} Based on Appellant's arguments, we have found one error under assignment of error number four that warrants a modification of the maximum sentence imposed by the trial court for the aggravated robbery of Mr. Sovak. For this reason, we partially sustain Appellant's fourth assignment of error.
 {¶ 98} Appellant's fifth assignment of error asserts:
 {¶ 99} "The trial court erred when it imposed non-minimum, maximum, and consecutive sentences based on facts not found by the jury or admitted by Mr. Barnette, in contravention of Blakely v. Washington
(2004), ___ U.S. ___, ___ L.Ed.2d ___, 124 S.Ct. 2531, 2004 WL 1402697, and Mr. Barnette's Sixth Amendment right to trial by jury. (Sentencing Hearing Tr. pp. 33-47)."
 {¶ 100} Appellant did not raise this assignment of error in his initial brief or in his supplemental brief after new counsel had been appointed. We granted Appellant leave to file this fifth assignment of error in order to assert arguments arising from the very recent United States Supreme Court case of Blakely v. Washington (2004), 542 U.S. ___,124 S.Ct. 1531, 159 L.Ed.2d 403, which was released on June 24, 2004. Appellant argues that the holding in Blakely effectively prevents him from receiving any sentence other than the minimum possible sentence under Ohio law.
 {¶ 101} Blakely reviewed the constitutionality of the felony sentencing guidelines of the State of Washington. Blakely held that part of Washington's felony sentencing scheme violated the Sixth Amendment
right to jury trial because it allowed the trial judge to impose an exceptional sentence based on facts that were neither admitted by the defendant nor found by a jury.
 {¶ 102} After examining Appellant's argument, it appears that he has waived the issue he is now attempting to assert on appeal. Any sentencing challenge available to the defendant under Blakely is waived, because he did not object at trial to what he now contends is a violation of his constitutional right to a jury trial. See, e.g., State v. Awan (1986),22 Ohio St.3d 120, 123, 22 OBR 199, 489 N.E.2d 277; State v. Ireson
(1991), 72 Ohio App.3d 235, 240, 594 N.E.2d 165; cf. Gibson v. MeadowGold Dairy (2000), 88 Ohio St.3d 201, 204, 724 N.E.2d 787.
 {¶ 103} The fact that Blakely was decided after Appellant had submitted his brief on appeal, and after oral argument had been held, is not determinative in our analysis. The issues that were under review inBlakely were previously reviewed many times by the United States Supreme Court and by legions of lower federal court and state court decisions.Blakely is only the most recent progeny of a line of cases that includes the seminal case of Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, 147 L.Ed.2d 435. In Apprendi, the defendant pleaded guilty to firearm possession charges as part of a plea agreement. During sentencing, the trial court determined that the crime was committed with the purpose to intimidate because of race, in violation of New Jersey's hate-crime statute. The finding by the trial court elevated the penalty from a maximum of 10 years to a period of 10 to 20 years.
 {¶ 104} Apprendi held that, "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435; see alsoRing v. Arizona (2002), 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556;Harris v. U.S. (2002), 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524.
 {¶ 105} The argument that Appellant is now attempting to assert under the authority of Blakely is essentially the same argument raised inApprendi. The Apprendi case was decided on June 26, 2000, long before Appellant was convicted and sentenced for the crimes he committed against Mr. Sovak and Mr. and Mrs. Luchisan. Apprendi was decided three and one half years before Appellant's substitute counsel submitted his first supplemental brief on appeal, and any issues related to the constitutionality of Ohio's sentencing scheme certainly could have been, and should have been, raised at that time. Furthermore, Blakely dealt with well-established, rather than novel, constitutional rights, which must be timely raised at trial in order to be preserved as issues on appeal. See Awan, supra, 22 Ohio St.3d at 123. We are not in the habit of allowing parties to raise additional arguments in the eleventh hour on appeal that could have been raised at trial or within the time limits set forth in the Ohio Rules of Appellate Procedure. In fact, this would violate one of the most basic tenets of appellate review.
 {¶ 106} Furthermore, it does not appear the Ohio's felony sentencing scheme would run afoul of the holdings in Apprendi and Blakely. Blakely
stands for the proposition that, under the Sixth Amendment, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely, 124 S.Ct. at 2536, 159 L.Ed.2d 403. In Blakely, the "statutory maximum" is not the longest term the defendant can receive under any set of circumstances. Instead, it is, "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 2537, 159 L.Ed.2d 403. In Ohio, the trial judge does not have the discretion to impose a sentence greater than the sentence prescribed for each crime as listed in the indictment. For example, Appellant was charged and convicted on two counts of aggravated burglary, in violation of R.C. § 2911.11(A)(1). Aggravated burglary is designated as a first degree felony, which is punishable by three to ten years in prison. R.C. § 2929.14(A)(1). Once a jury makes the findings that establish that the crime of aggravated burglary has been committed, the trial court has discretionary power to impose a punishment within the statutory range for a first degree felony. Unlike the statutes at issue in Blakely, Ohio's statutory scheme does not provide exceptions to give the trial court power to exceed the maximum punishment allowed by the aggravated burglary statute. Any sentencing enhancements, such as gun specifications, must also be included in the indictment, and the jury must find the defendant guilty beyond a reasonable doubt of those enhancements as well.
 {¶ 107} We agree with those Ohio courts that have already concluded that the Ohio felony sentencing scheme does not violate the holdings inApprendi and Blakely. See, e.g. State v. Scheer, 4th Dist. No. 03CA21,2004-Ohio-4792; State v. Sour, 2nd Dist. No. 11913, 2004-Ohio-4048; Statev. Bell, 1st Dist. No. C030726, 2004-Ohio-3621. While we are aware that our colleagues in the Eighth District have decided otherwise, based on our analysis that Blakely issues may not be raised for the first time on appeal, we are forced to disagree with the Eighth District. We believe that these matters were beyond the court's jurisdiction.
 {¶ 108} Based on the foregoing analysis, we overrule Appellant's fifth assignment of error.
 CONCLUSIONS {¶ 109} We have overruled Appellant's first, third, and fifth assignments of error. We have sustained Appellant's second assignment of error, and partially sustained his fourth assignment of error. Both errors concern matters relating solely to sentencing. R.C. § 2953.08(G)(1) does not require this Court to remand the case for resentencing based on the sentencing errors we have found in this appeal. R.C. § 2953.08(G)(2) allows us to, "increase, reduce, or otherwise modify a sentence that is appealed under this section or vacate the sentence and remand the matter to the sentencing court for resentencing." Based on the authority of R.C. § 2953.08(G)(1), and based on our analysis above, we modify Appellant's sentence as follows. First, we modify Appellant's 18-month prison sentence on the charge of receiving stolen property (count twelve in the indictment) so that it will run concurrently with the sentences for the remaining counts. Second, we reduce Appellant's prison sentence on the charge of aggravated robbery (count three in the indictment) to two years in prison, to run concurrently with the sentences on the remaining counts. Appellant's total prison sentence is now an aggregate of 74 years in prison. We affirm all remaining aspects of Appellant's conviction and sentence in the Mahoning County Court of Common Pleas.
Donofrio, J., concurs.
DeGenaro, J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion.