DECISION AND JUDGMENT ENTRY
{¶ 1} Jonas Miller appeals his felony sentences in the Washington County Common Pleas Court. On appeal, Miller contends that the trial court erred when it found that the criminal offenses constituted "organized criminal activity." Because the record contains competent, credible evidence to support the trial court's finding, we disagree. Miller next contends that the court erred when it sentenced him on the offense of receiving stolen jewelry, because it is an allied offense of similar import to the burglary offense involving the theft of jewelry. Because the receiving stolen jewelry offense involved jewelry taken from several different residences, instead of just the jewelry taken in the one burglary offense, we disagree. Miller next contends that his twelve-year sentence is excessive. Because the trial court followed the statutory *Page 2 
guidelines, and because Miller failed to show that the trial court abused its discretion, we disagree. Finally, Miller contends that his sentence violates the Due Process and Ex Post Facto Clauses of the United States Constitution. We disagree. Accordingly, we overrule Miller's assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} The Washington County Grand Jury indicted Miller for eight counts of burglary, three counts of breaking and entering, seven counts of grand theft, one count of receiving stolen property, one count of conspiring to engage in a pattern of corrupt activity, and one count of engaging in a pattern of corrupt activity. These alleged crimes took place between September and December of 2005. Eventually, Miller pled guilty to four of the charges, i.e., breaking and entering, burglary, receiving stolen property, and conspiring to engage in a pattern of corrupt activity. The state dismissed the remaining charges.
The breaking and entering offense stemmed from an incident at a Dairy Queen. One of its employees, Keely Jaegar, told Miller and his brother, Wesley Miller, about the store's closing procedures, the location of the cash drawer, and the lack of any security cameras. Later, she drove them to the Dairy Queen, parking a short distance away. The brothers went to the store, broke in using a crowbar, and stole two to three thousand dollars.
The burglary offense happened a few days later and involved the Rushing residence. Because Mr. Rushing was a minister, the Miller brothers determined that he went to church services on Sunday evening. Outside the Rushing home, they used a *Page 3 
cell phone to call inside; they believed if no one answered, then no one was present. No one answered the phone; so, they went inside and stole jewelry.
 {¶ 3} Later, police recovered this jewelry along with other jewelry stolen from other residences. Police found additional stolen property in a car belonging to one of the brothers and in a hotel room where they stayed. They used the fruits of these crimes to support themselves and pay for their hotel room. All totaled, the police investigation showed that Miller was involved in 11 thefts.
 {¶ 4} At the sentencing hearing, the state read the pertinent facts of the investigation into the record. The court then asked Miller if the facts were true. Miller admitted that everything was true except that the jewelry found by the police in his vehicle was not in a shoebox. Miller also contended that they took $2,000 from the Dairy Queen, not $3,000. However, he admitted that he stole jewelry from various residences, instead of just one residence.
 {¶ 5} In sentencing Miller, the trial court indicated that it considered the statutory guidelines as required by R.C. 2929.11 and2929.12, along with the principles and purposes of sentencing.
 {¶ 6} With regard to the seriousness of Miller's offenses, the court stated that Miller "caused economic harm to numerous victims * * * committed the offense for hire or as a part of an organized criminal activity."
 {¶ 7} With regard to recidivism factors, the court first listed twenty-six prior adult and juvenile criminal convictions. The court found that Miller "demonstrated a pattern of drug or alcohol abuse related to the offense and refuses to acknowledge the pattern or *Page 4 
refuses treatment." The court next found that Miller "at the time of the offense was released on bail or awaiting sentencing, under another non-prison sanction, or under the control after being released from prison." The court further found that Miller "has failed to respond to community control in the past."
 {¶ 8} Finally, the court found that its sentence was "reasonably calculated to achieve" the overriding purposes of felony sentencing. The court then imposed a twelve-year prison term as follows: one year for the breaking and entering, three years for the burglary, one year for the receiving stolen property, and seven years for the conspiring to engage in a pattern of corrupt activity. The court ordered the sentences to run consecutive to each other.
 {¶ 9} Miller appeals and raises the following two assignments of error: I. "The trial court erred and abused its discretion when it ordered Mr. Miller to serve a twelve-year prison term. This error deprived Mr. Miller of his Fifth and Fourteenth Amendment due process rights." II. "The trial court erred when it ordered Mr. Miller to serve nonminimun, maximum, and consecutive prison terms. This error deprived Mr. Miller of his Sixth Amendment right to trial by jury."
 II. {¶ 10} Miller contends in his first assignment of error that his sentence is contrary to law for three reasons. First, he claims that the offenses did not constitute part of an organized criminal activity. Second, he asserts that the court should not have sentenced him separately for the receiving stolen property offense because it is an *Page 5 
allied offense of similar import to theft, which was part of the burglary offense. Finally, he maintains that the court abused its discretion when it imposed a 12-year prison term.
 {¶ 11} We first note that the trial court sentenced Miller after the Supreme Court of Ohio decided State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. The Foster court held that the portions of Ohio's statutory sentencing scheme that required sentencing courts to make factual findings or give its reasons for imposing maximum, consecutive, or more than minimum sentences are unconstitutional. Id. at paragraphs 1-6 of the syllabus. The Court severed those portions of the sentencing statutes, and retained the portions of the sentencing statutes that do not violate the constitution. Id. at ¶ 96. "Trial courts have full discretion to impose a prison sentence within the statutory range, and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. Thus, after Foster, our standard of review is abuse of discretion. See, e.g., State v. Firouzmandi, Licking App. No. 06-CA-41, 2006-Oho-5823, ¶ 10.
 {¶ 12} In sentencing a felony offender, the sentencing court must consider the general guidance factors contained in R.C. 2929.11 and R.C.2929.12. Foster at ¶ 42. The court must impose a sentence that is reasonably calculated to achieve the two overriding purposes of felony sentencing, i.e., protecting the public from future crime by the offender and others and punishing the offender. R.C. 2929.11(A). It is within the court's discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C.2929.11. R.C. 2929.12(A). However, the court must consider the factors set forth in R.C. 2929.12(B) and (C) relating to the *Page 6 
seriousness of the offender's conduct, and those set forth in R.C.2929.12(D) and (E) relating to the likelihood of the offender's recidivism. R.C. 2929.12(A). Additionally, the court may consider any other factor that it deems relevant to achieving the principles and purposes of sentencing. Id.
 {¶ 13} Miller first contends that the trial court erred when it considered the seriousness factors. Specifically, he maintains that the court erred when it found that the offenses constituted "organized criminal activity." We disagree.
 {¶ 14} Chapter 2929 of the Revised Code does not define "organized criminal activity." Griffin and Katz define the term as "a criminal activity which because of the number of participants and planned utilization of those participants poses more of a risk to the public order than an activity carried out by a single individual acting in isolation from other offenders or than multiple individuals acting together spontaneously or impulsively." Griffin and Katz, Ohio Felony Sentencing Law (2004), 563, Section 5:21. Several courts have used this definition. See, e.g., State v. Grays, Butler App. No. CA2005-07-187,2006-Ohio-2246, ¶ 15; State v. Fimognar. Wood App. No. WD-04-095,2005-Ohio-5880, ¶ 34; State v. Dute, Hamilton App. No. C-020709, 2003-Ohio-2774, ¶ 37.
 {¶ 15} Here, the record shows that the state outlined the facts at the sentencing hearing that involved the four offenses. The record shows that Miller, his brother, and his girlfriend broke into a Dairy Queen. Jaegar provided the Millers with the information they needed to successfully break in, and she provided them with transportation. Later, the Millers broke into the Rushing house. They planned the day and time, and then *Page 7 
they used a cell phone to double-check the efficacy of the plan. These incidents, and numerous others, i.e., burglaries of the Brown, Russell, Nine, Murphy, Venham, King, and Shutts residences plus break-ins at the Fair Board, the business in the Vincent area, and the Auto Mart, demonstrate that the crimes were pre-planned events that occurred over a four-month period with the intent to use all the participants.
 {¶ 16} Based upon the above record, we find that these crimes were not the product of two or three individuals working loosely together, neither was anyone's participation in the crimes spontaneous or impulsive. See, e.g., Fimognari, supra, and State v. Martinez, Wood App. No. WD-01-027, 2002-Ohio-735. In addition, Miller's guilty plea to conspiring to engage in a pattern of corrupt activity is, at a minimum, an admission of planning or aiding organized criminal activity. See, e.g., State v. Barnette, Mahoning App. No. 02CA65, 2004-Ohio-7211
(whether a person committed an offense as part of an organized criminal activity is an element of Ohio's RICO statute, i.e. R.C. 2923.32), reversed on other grounds In re Ohio Criminal Sentencing Statutes Cases,109 Ohio St.3d 313, 2006-Ohio-2109. Therefore, competent, credible evidence supports the trial court's finding. Consequently, we find that Miller has failed to show that the trial court abused its discretion when it made the "organized criminal activity" finding.
 {¶ 17} Miller next contends that the court erred when it imposed a consecutive sentence for the receiving stolen property offense. He maintains that it is "hornbook law that a thief cannot be charged with committing two offenses — that is stealing and receiving the goods he has stolen." State v. Barnette, Mahoning App. No. 02CA65,2004-Ohio-7211, ¶ 49. *Page 8 
 {¶ 18} We agree with Miller that the court cannot sentence him for an offense involving the theft of goods and with the separate offense of receiving those same goods. See, generally, State v. Botta (1971),27 Ohio St.2d 196, 204. However, that did not happen in this case.
 {¶ 19} Here, the court sentenced Miller for one burglary involving stolen jewelry from the Rushing residence and for receiving stolen jewelry taken from numerous residences. Miller admitted at sentencing that the jewelry came from various residences. Therefore, the stolen goods are not exclusively the product of the Rushing burglary. Consequently, we find that Miller has failed to show that the trial court abused its discretion when it imposed the consecutive sentence for receiving stolen property.
 {¶ 20} Miller next contends that the trial court erred when it imposed a twelve-year prison term for the four offenses. He claims that he committed the offenses while under the influence of drugs, he harmed no person, and the court ordered him to make restitution.
 {¶ 21} We find that the sentence is not excessive. The record shows that Miller had an extensive prior record. He apparently refuses to address his drug problem. He conspired with others in an organized and sustained fashion. In addition, economic harm occurred. Further, he did not receive the maximum sentence for each offense.
 {¶ 22} Miller entered guilty pleas to breaking and entering, burglary, receiving stolen property, and conspiracy to engage in a pattern of corrupt activity. The trial court imposed a sentence that was within the statutory limits. The court properly considered the factors in R.C.2929.11 and R.C. 2929.12. The court imposed a sentence *Page 9 
"reasonably calculated" to achieve the two overriding purposes of felony sentencing. The court addressed the seriousness and recidivism factors. Therefore, we find that the court properly applied the statutory guidelines and that Miller has failed to show that the trial court abused its discretion.
 {¶ 23} Accordingly, we overrule Miller's first assignment of error.
 III. {¶ 24} Miller next contends that the trial court committed plain error when it sentenced him to a non-minimum, maximum, and consecutive prison term. The crux of his argument is that the trial court improperly sentenced him to more than the minimum term of imprisonment when it sentenced him in accordance with the Supreme Court of Ohio's decision inFoster. In short, Miller asserts that the sentencing statutes create a presumption in favor of minimum sentences for offenders who have not previously served a prison term, and that the court's holding inFoster violates the Due Process and Ex Post Facto Clauses of the United States Constitution by retroactively eliminating that presumption.
 {¶ 25} We first note that Miller did not raise this argument at his sentencing hearing on November 28, 2006, even though the Supreme Court of Ohio decided Foster on February 27, 2006. State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642 (When a defendant is sentenced afterBlakely v. Washington (2004), 542 U.S. 296, he forfeits his right to raise judicial fact-finding enhancement issues on appeal unless he objects at sentencing or he can show plain error.). Pursuant to Crim.R. 52(B), we may notice plain errors or defects affecting substantial rights, even though a defendant did not bring *Page 10 
them to the trial court's attention. A reviewing court should use its discretion under Crim.R. 52(B) to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 26} In Foster, the Ohio Supreme Court considered the constitutionality of Ohio's sentencing statutes in light of the United States Supreme Court's holdings in Blakely and Apprendi v. NewJersey (2000), 530 U.S. 466. The court found that, underBlakely and Apprendi, R.C. 2929.14(B), R.C. 2929.14(E)(4) and R.C.2929.19(B)(2), as well as other sections of the Ohio Revised Code, violated the Sixth Amendment to the extent that they required judicial fact finding. Foster at paragraphs one through seven of the syllabus. In constructing a remedy, the Foster court excised the provisions it found to offend the Constitution, granting trial court judges full discretion to impose sentences within the ranges prescribed by statute. Id. The court then held that the cases before it "and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent" with the court's opinion. Id. at ¶ 104. Consistent with the United States Supreme Court's holding in United States v.Booker (2005), 543 U.S. 220, the Foster court only applied its holding retroactively to cases that were then pending on direct review or not yet final. Foster at ¶ 106.
 {¶ 27} In State v. Grimes, Washington App. No. 04CA17, 2006-Ohio-6360, this court considered and rejected a Due Process and Ex Post Facto challenge to a sentence imposed in accordance with the Ohio Supreme Court's holding in Foster. There, we agreed with the observations of the Ninth and Second Districts, which rejected such *Page 11 
challenges outright. In doing so, those courts expressed that "it is unlikely that the Ohio Supreme Court would have directed lower level courts to violate the Constitution and, in any event, [the district courts of appeal] are bound by Ohio Supreme Court directives." Id. at ¶ 8, citing State v. Hildreth, Lorain App. No. 06CA8879, 2006-Ohio-5058, at ¶ 10; State v. Durbin, Greene App. No. 2005-CA-134, 2006-Ohio-5125, at ¶¶ 41-42.
 {¶ 28} In finding that the Ohio Supreme Court's remedy inFoster does not violate the Due Process or Ex Post Facto clauses of the United States Constitution, we also expressed our approval of the reasoning set forth by the Third District in State v. McGhee, Shelby App. No. 17-06-05, 2006-Ohio-5162. Grimes at ¶ 9, citing with approvalMcGhee at ¶¶ 11 13-20. Because the range of prison terms for the defendant's offense remained the same both before and afterFoster, we concluded, "[i]t is difficult to understand how appellant could maintain that an enlargement of the criminal statute occurred, generally, or available punishments, in particular." Id at ¶ 10. Further, we noted that the appellant did not attempt to explain how he would have acted differently had he known that the Ohio Supreme Court would strike down parts of R.C. 2929.14. Id. Accordingly, we found that the court did not err in imposing the maximum sentence for the offense. Id. at ¶ 11. Based upon our holding in Grimes, we find that the trial court did not err in imposing a non-minimum, maximum, and consecutive sentence for Miller's four offenses.
 {¶ 29} Therefore, we find that the trial court did not commit any error, let alone plain error, when it sentenced Miller. *Page 12 
 {¶ 30} Accordingly, we overrule Miller's second assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 13 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellant pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. and McFarland, J.: Concur in Judgment and Opinion. *Page 1